IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100726-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 30, 2012) |
| Ronald Dean Udy, | ) | |
| | ) | 2012 UT App 244 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 051909160
The Honorable William W. Barrett

Attorneys:     Lori J. Seppi, Salt Lake City, for Appellant
               Mark L. Shurtleff and Andrew F. Peterson, Salt Lake City, for Appellee

-----

Before Judges McHugh, Orme, and Thorne.

McHUGH, Presiding Judge:

¶1     Ronald Dean Udy appeals from his concurrent sentences of one to fifteen years in prison for securities fraud, a second degree felony, and zero to five years in prison for false statements in a securities document, a third degree felony. *See* Utah Code Ann. § 61-1-1 (2011) (securities fraud); *id.* § 61-1-16 (false statements); *id.* § 61-1-21 (penalties).[1] We vacate the sentences and remand for resentencing.

---

1. Because amendments since the time of the offenses have not materially changed the crimes with which Udy was charged, we cite the current version of the Utah Code for the convenience of the reader.

BACKGROUND

¶2    The Utah Division of Securities (the Division) revoked Udy's broker-dealer/agent license on October 9, 2003, for issuing unregistered securities in violation of a Stipulation and Consent Order, and barred him from employment with any licensed broker-dealer or investment advisor in Utah.  Nonetheless, Udy continued to offer and sell promissory notes.  On December 21, 2005, the State charged Udy with four felony counts related to his alleged solicitation of loans from dozens of victims:  one count of making false statements in a securities document, two counts of securities fraud, and one count of sale by an unlicensed broker-dealer or agent.  The State calculated that Udy owed nearly $14.7 million in restitution, an amount that Udy challenged.  On December 3, 2007, Udy entered a guilty plea to one count of securities fraud and one count of false statements in a securities document and the State dismissed the other charges.  The trial court held the plea in abeyance on the condition that Udy pay restitution to all of the identified victims and obey all securities laws.  Just nine days after the plea, Udy solicited an additional $50,000 from one of his previous victims.  The victim reported Udy to the Division in June 2009.  As a result, the trial court revoked Udy's plea in abeyance and entered his plea as guilty.

¶3    At a "sentencing" hearing on May 3, 2010 (the First Hearing), defense counsel represented that Udy was working on a "business deal" with an expected "$15 million" commission with which Udy planned to pay restitution.  Udy personally addressed the court and described the deal.  He also apologized to the State and to the victims.  According to Udy, the deal would fail if he were incarcerated because he was "the middle man on it."  Although the State was skeptical, some of the victims asked the trial court to give Udy time to finalize the deal so that he could repay them.  The trial court asked Udy how long he needed to close the deal, to which Udy replied, "60 days at most."

¶4    The trial court then announced that it was "ready to sentence" Udy and stated,

> I'm going to give him 1 to 15 on the two second degree
> felonies;[2] zero to 5 on the third; stay the imposition of that
> sentence.  I'm going to make him do a year in jail.  And then

---

2. Udy pled guilty to one of the two second degree felonies with which he was charged and the other was dismissed by the State.  The sentence entered on August 3, 2010, reflects Udy's guilty plea to one second degree felony and one third degree felony.

after the year in jail, he'll be on 36 months probation. But this is the deal. Right now it's May 3rd. We'll go to June, July and I'm going to cut you a little slack here, if you have—we'll set a review on the 2nd of August—no, . . . I'll give you even some more time. Let's do the review on the 3rd of August, 8:30 in the morning. You have these people paid off because this money has come in in the 60 day time frame, I'll reconsider the jail sentence and I may cut it down. You'll do a little jail. [There's] going to be a little punitive aspect to it, but I'm willing to do that and some of those people have urged me to do that. And if you don't, you're going to do the year regardless.

After further discussion, the trial court warned that if the restitution was not paid within three months, Udy was "at least going to go to jail, and he may go to prison." The court explained that it was "relying on what he's telling me right now and I'm really skeptical. . . . It just sounds like a lot of hot air."

¶5    An unsigned document titled "Minutes Sentencing Sentence, Judgment, Commitment" (the First Order) from the First Hearing states that Udy was sentenced to suspended prison terms, and that "if the defendant pays off all victims, court will consider jail sentence, if the victims are not paid off, defendant will serve the 365 days as ordered." The First Order characterized the hearing set for August 3, 2010 (the Second Hearing), as a "Review Hearing."

¶6    At the Second Hearing, Udy's counsel informed the trial court that Udy had been unable "to make substantial restitution payments," but asked for more time to complete the deal, stating, "[I]f [Udy] is taken into custody today, . . . it's very likely that that particular business deal would fall through." When trial counsel then submitted a letter and an email and attempted "to bring the Court up to speed with respect to what has been occurring," the trial court interrupted, stating, "[G]ive me a break. I gave him a drop dead date and I let him tell me how long it would take. Did I not?" After Udy's counsel acknowledged, "You did, your honor," the court stated, "It's over. It's over." Udy's attorney then attempted to speak, stating, "Your Honor—" but the court interjected, "No, no, no. It's over. I gave him an opportunity . . . ." After refusing to hear from the defense, the trial court invited the State to comment, eliciting the State's "feeling" that the letter "was just printed up," and its "instinctual feeling" that "Mr.

Udy is probably being scammed and he's taken some of this . . . latest money that he's received from people, sent it on to this bigger fish that's scamming him." The State concluded by stating, "[T]he bottom line is that this money is not coming," to which the trial court responded, "I don't believe it is either."

¶7     Udy's counsel again attempted to speak, stating, "Your Honor, I have another matter—" at which point the trial court cut him off with, "No. No, we're not talking any more. Enough is enough. And I said jail time." The trial court then stated that it had "revisited this . . . and I feel so sorry for these people who have been ripped off." The trial court then sentenced Udy to concurrent prison terms of one to fifteen years and zero to five years. Udy's counsel protested the sentence, saying that he understood "prison was suspended [and] that he was sentenced to one year in the Salt Lake County Jail." The trial court replied, "No, I'm backing up on that. . . . I initially said that I was going to give him a year in jail. I'm not. He lied to me. And if he lies to me, then he's going to pay the price. . . . So he's going to prison. And I did sentence him to prison, but I suspended it. Now he's going forthwith."

¶8     In response to trial counsel's request for further explanation, the trial court stated its belief that Udy had intentionally deceived the court at the May hearing when "he assured [the court] that that money would be here so he could pay off those people. . . . He lied. . . . He doesn't get the benefit of the better sentence." Udy's counsel then stated that the trial court had already sentenced Udy to one year in jail but had offered "a discount" if he was able to pay the restitution. The trial court disagreed, explaining that it had offered Udy "the benefit of the doubt" and provided him an "opportunity" to show that he deserved leniency. However, the court indicated that it was going to "pull the plug" on the jail sentence because of Udy's admission to the offenses and Udy's dishonesty about the restitution efforts.

¶9     On the same day as the Second Hearing, the trial court signed and entered a document titled "Minutes Sentence, Judgment, Commitment," memorializing the prison sentence. The trial court later signed and entered a "ruling" explaining that at the First Hearing, Udy "was sentenced on the felony charges which were suspended and he was given a year in jail," but that because Udy "had misrepresented and lied to the court regarding his ability" to repay the victims, the court "amended the sentence and sent [Udy] to prison rather than imposing the jail term ordered [at the First Hearing]."

¶10    Udy filed a timely appeal and also filed a Motion to Correct Sentence under rule 22(e) of the Utah Rules of Criminal Procedure.


ISSUES AND STANDARD OF REVIEW

¶11    Udy challenges his prison sentence as a violation of federal and state constitutional protection against double jeopardy. *See* U.S. Const. amend V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."); Utah Const. art. I, § 12 ("[N]or shall any person be twice put in jeopardy for the same offense."). Alternatively, Udy claims that the trial court violated his right to allocution and due process when it refused to allow him to make a statement or introduce mitigating evidence during the Second Hearing. We review these questions of law for correctness. *See Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.


ANALYSIS

I. Double Jeopardy

¶12    Udy claims that the trial court subjected him to double jeopardy by increasing his sentence after he had a legitimate expectation of finality in it. The State contends that we should decline to address Udy's double jeopardy claim because it is not preserved. If we do consider the claim, the State argues that Udy was not sentenced until the Second Hearing. In response, Udy asserts that he preserved the double jeopardy claim in his rule 22(e) motion filed in the trial court. Even if that motion did not preserve the claim, Udy contends that we should consider his claim, either because the sentence is illegal and can be challenged at any time or because his trial counsel was ineffective in failing to preserve the double jeopardy claim.[3] We need not consider whether Udy's double jeopardy claim is preserved because Udy can raise his double jeopardy claim for the first time on appeal.

---

3. Because we evaluate Udy's sentence under rule 22(e) of the Utah Rules of Criminal Procedure, we do not also consider his alternative argument that trial counsel was ineffective.

A.  Rule 22(e)

¶13    Rule 22(e) of the Utah Rules of Criminal Procedure provides that a "court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." When we consider a sentence under rule 22(e), "[t]he preservation rule does not apply 'because an illegal sentence is void and, like issues of jurisdiction, [may be raised] at any time.'" *State v. Candedo*, 2010 UT 32, ¶ 9, 232 P.3d 1008 (second alteration in original) (quoting *State v. Telford*, 2002 UT 51, ¶ 5, 48 P.3d 228).  "A sentence imposed in contravention of the Double Jeopardy Clause is an 'illegal sentence'—even under a 'narrowly circumscribed' construction of rule 22(e)." *State v. Prion*, 2012 UT 15, ¶ 24, 274 P.3d 919 (quoting *Candedo*, 2010 UT 32, ¶ 9); *see also Candedo*, 2010 UT 32, ¶ 14 ("[T]he definition of illegal sentence under rule 22(e) is sufficiently broad to include constitutional violations that threaten the validity of the sentence.").  Thus, if Udy's prison sentence violates double jeopardy, it is an illegal sentence that can be corrected "at any time." *See* Utah R. Crim. P. 22(e).

B.  Double Jeopardy

¶14    The United States and Utah Constitutions contain double jeopardy provisions that are "essentially identical." *See State v. Trafny*, 799 P.2d 704, 709 n.18 (Utah 1990). However, "[w]hile reference to the federal standard for protection of the right not to be placed twice in jeopardy is instructive, we conduct our double jeopardy analysis pursuant to the Utah Constitution." *Id.*  "[T]he core of the double jeopardy guarantee is a prohibition of a 'second trial following an acquittal.'" *Prion*, 2012 UT 15, ¶ 31 (quoting *Arizona v. Washington*, 434 U.S. 497, 503 (1978)).  Double jeopardy "embodies three separate protections:  (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense." *State v. Rodrigues*, 2009 UT 62, ¶ 36, 218 P.3d 610 (internal quotation marks omitted).

¶15    Here, Udy argues that the trial court violated the prohibition against multiple punishments for the same offense by first sentencing him to a suspended prison term, with a maximum of one year in jail to be followed by probation at the First Hearing, and then increasing his sentence to two concurrent prison terms at the Second Hearing.  Of significance to our analysis of this issue is the concept that the "double jeopardy protection against retrial does not extend with equal force to resentencing." *Prion*, 2012 UT 15, ¶ 32.  Indeed, "'resentencing per se does not implicate the double jeopardy

protection from multiple punishments.'" *Rodrigues*, 2009 UT 62, ¶ 36 (quoting *State v. Maguire*, 1999 UT App 45, ¶ 11, 975 P.2d 476). Rather, double jeopardy bars resentencing only if a defendant has "'a legitimate expectation of finality in his original sentence.'" *See id.* (quoting *Maguire*, 1999 UT App 45, ¶ 8). Thus, even where resentencing is clearly allowed by statute, its "constitutionality . . . depends on a number of factors, such as whether the particular resentencing proceeding at issue has an established pedigree, occurs within a limited timeframe, and approximates the ordeal of a new trial." *Prion*, 2012 UT 15, ¶ 39.

¶16    While Udy claims that the trial court imposed his sentence at the First Hearing and then increased it at the Second Hearing, the State contends that the two hearings constitute a single sentencing hearing that resulted in only one final sentence. We need not resolve this issue because, even accepting the trial court's own characterization that it sentenced Udy at the First Hearing and amended that sentence at the Second Hearing, Udy had no legitimate expectation of finality in the sentence announced at the First Hearing.

¶17    After changing Udy's plea in abeyance to guilty, the trial court set the case for a "sentencing" hearing. At that First Hearing, the trial court stated that it was "ready to sentence" Udy and explained that it was going to sentence Udy to prison but that it would "stay the imposition of that sentence," and "make him do a year in jail," followed by "36 months probation." Immediately after outlining what it was "going to give" Udy, the trial court continued, "But this is the deal." It then explained that Udy would have three months to earn the commission and repay his victims, expressly cautioning that Udy's sentence could be affected by the success of those endeavors. While the trial court indicated that it would hold a "review" hearing and "reconsider the jail sentence," including the possibility that he "may cut it down" if the victims were made whole, it also warned that if the restitution was not paid, Udy would "do the year regardless." Before concluding the First Hearing, the trial court reiterated the importance of repaying the victims before the Second Hearing and warned that if Udy failed in those efforts he was "at least going to go to jail, and he may go to prison."

¶18    As discussed, the focus of a double jeopardy inquiry is the time at which the expectation of the finality of the sentence becomes legitimate. *See Rodrigues*, 2009 UT 62, ¶ 36. Where the trial court expressly indicates that the sentence announced is subject to change, it is not reasonable to expect that the sentence is final. For example, "in cases where the court has expressly declined to impose a final sentence until it has had the

opportunity to review sentencing information," jeopardy does not attach until the trial court issues "a final signed order." *See State v. Horrocks*, 2001 UT App 4, ¶ 23, 17 P.3d 1145; *see also id.* ¶ 25 (explaining that a trial court may "change an oral sentencing decision when it has specifically reserved that option pending receipt of further information relevant to sentencing and the sentencing decision is not binding on the court until a final written order is entered"). Here, the trial court expressly warned that the sentence was subject to change, and it did not sign the first sentencing order. *See State v. Wright*, 904 P.2d 1101, 1102 (Utah Ct. App. 1995) (holding that a prison sentence did not violate double jeopardy or due process, despite the trial court's prior oral statement that the defendant would be given probation, because the court indicated that it would not impose sentence until it received the presentence report and entered a written sentencing order); *State v. Curry*, 814 P.2d 1150, 1150–51 (Utah Ct. App. 1991) (holding that a trial court's imposition of a written sentencing order imposing consecutive sentences did not violate due process or double jeopardy, despite the trial court's prior oral statement that the sentences would run concurrently, because the minute entry stated that the sentencing was continued). Here, the trial court informed Udy that the sentence was subject to change based on his success in repaying the victims. Under these circumstances, Udy did not have a legitimate expectation of the finality of the sentence announced at the First Hearing.

¶19     Nevertheless, Udy contends that the oral sentence and unsigned First Order were final. He argues that the trial court refrained from signing the First Order in order to retain subject matter jurisdiction so that it could reduce his sentence if Udy repaid the victims.[4] Even if Udy is correct, we fail to see how the unsigned First Order could create a *legitimate* expectation of finality where the trial court expressly indicated that the sentence announced at the First Hearing was subject to change. *See Horrocks*, 2001 UT App 4, ¶¶ 23–25. Furthermore, despite Udy's urging, we are unwilling to treat the trial court's warning that he "may go to prison" as an "offhand remark." The trial court was clear that the sentence announced at the First Hearing would be reviewed in three months and that whether Udy had repaid the victims would determine whether his jail sentence would be reduced, or in the alternative, whether he could go to prison. Based

---

4. Upon the execution of a sentencing order remanding the defendant to custody of the Department of Corrections, the trial court ordinarily loses subject matter jurisdiction. *See State v. Rodrigues*, 2009 UT 62, ¶ 13, 218 P.3d 610.

on the trial court's statements, Udy did not have a legitimate expectation of finality in the sentence outlined at the First Hearing.[5]

¶20    Finally, Udy asserts that he was actually serving the sentence imposed at the First Hearing during the three months before the Second Hearing.  Not surprisingly, if the defendant has already started serving the sentence, he is more likely to have a reasonable expectation of finality.  *See United States v. Fogel*, 829 F.2d 77, 89 (D.C. Cir. 1987) (holding that a defendant who "proceeded to serve the sentence as if it were final in all respects . . . had no reason to believe that the district court could, on its own motion and without explanation, increase the length of his sentence.").  However, even in instances where the defendant has begun to serve his sentence, the trial court may constitutionally modify it under certain circumstances.  *See State v. Prion*, 2012 UT 15, ¶ 39, 274 P.3d 919.  We need not consider those circumstances here because Udy did not yet know what his sentence would be and thus could not have begun serving it before the Second Hearing.[6]

---

5.  We consider Udy's reliance on *State v. Todd*, 2006 UT 7, 128 P.3d 1199, to be misplaced.  There, the supreme court interpreted the requirement in the then-current version of rule 24(c) of the Utah Rules of Criminal Procedure that a motion for new trial be filed within ten days of the "'imposition of sentence'" and held that "the date of the oral announcement of the sentence to the defendant is the date of *imposition of sentence* for all purposes."  *See id.*, ¶¶ 7-8 (emphasis added) (quoting then-current version of Utah R. Crim. P. 24(c)).  Here, the issue is not when the "imposition of sentence" occurred, it is when Udy had a legitimate expectation of the finality of his sentence.  Thus, the *Todd* decision, which contains no discussion of double jeopardy, is not helpful to our analysis.

6.  Even if Udy began serving his sentence after the First Hearing, he did not have a reasonable expectation of finality under the factors discussed in *State v. Prion*, 2012 UT 15, 274 P.3d 919.  *See id.* ¶¶ 39–65.  First, there is an "established pedigree" of precedent indicating that a defendant cannot have an expectation of finality where the trial court indicates that the sentence might change.  *See id.* ¶ 39; *see also State v. Horrocks*, 2001 UT App 4, ¶ 23, 17 P.3d 1145.  Second, because Udy requested the delay between the First and Second hearings, he cannot contend that the delay "prolong[ed] the period" of his "anxiety over the prospect of additional jeopardy."  *See Prion*, 2012 UT 15, ¶ 45 (internal quotation marks omitted).  Third, the prison sentence was imposed by the court based

(continued...)

¶21    In support, Udy cites *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007). However, that case is distinguishable.  There, Husein entered guilty pleas to several crimes and trial counsel argued for a sentence below the federal sentencing guidelines because she was a caretaker for her ailing father.  *See id.* at 322–24.  The district court concluded that the circumstances warranted significant downward departures from the guidelines and the government appealed, based in part on the fact that Husein's father died four months after sentencing.  *See id.* at 324, 338.  In affirming the original sentence, the Sixth Circuit noted that Husein had a legitimate expectation of finality in the sentence.  *See id.* at 338–39.  The district court had warned Husein that she could face prison time if she violated the terms of her supervised release.  *See id.* at 339.  However, "nothing in the record indicate[d] that Husein was aware at the time of sentencing that her sentence could 'permissibly be increased' or otherwise transformed from noncustodial to imprisonment" if her family situation changed.  *See id.*  Finally, there is nothing in *Husein* suggesting that either party asserted that she had not started to serve her sentence.  In contrast, the trial court here announced that Udy's sentence was subject to change and provided an approximately ninety-day grace period before he began serving his sentence so that Udy could try to repay the victims.

¶22    Indeed, Udy has cited no cases in which a defendant was held to have had an expectation of finality in a sentence that the sentencing court expressly indicated might change, was not reflected by a signed sentencing order, and had not resulted in the defendant being placed in the custody of the Department of Corrections or on probation.  At the First Hearing, the trial court explicitly stated that the sentence it had announced might decrease or increase depending upon Udy's success in repaying his victims.  Thus, Udy could have had no legitimate expectation of finality and the trial court did not violate double jeopardy when it amended the sentence after the Second Hearing.

## II.  Allocution

¶23    Next, Udy argues that the trial court erred in refusing to allow him an opportunity to allocute at the Second Hearing.  According to Udy, imposing the prison sentence without allowing him to speak in favor of mitigation violates his due process

---

6. (...continued)
on Udy's misrepresentations that he could pay restitution; it was not based on the State's appeal or a "retrial" by the State.  *See id.* ¶ 57 (internal quotation marks omitted).

rights and renders the sentence illegal. The State argues that we should not address this issue because Udy did not preserve it. *See generally State v. Nelson-Waggoner*, 2004 UT 29, ¶ 16, 94 P.3d 186 (stating the general rule that an appellate court will not consider an unpreserved issue unless the defendant can show "plain error or exceptional circumstances"). Udy asserts that the issue was preserved and, in the alternative, argues that we should consider his claim as an illegal sentence imposed in violation of rule 22(e) of the Utah Rules of Criminal Procedure or under the doctrine of plain error. We first consider the application of rule 22(e) to Udy's sentence.

## A. Rule 22(e)

¶24    The State contends that because Udy's sentence is not, in itself, "patently" or "manifestly" illegal, rule 22(e) does not apply. *See State v. Thorkelson*, 2004 UT App 9, ¶ 15, 84 P.3d 854 (internal quotation marks omitted). While it is true that rule 22(e) "must be narrowly circumscribed to prevent abuse," *see State v. Candedo*, 2010 UT 32, ¶ 9 & n.2, 232 P.3d 1008 (internal quotation marks omitted), it is applicable to two types of sentences: those that are "illegal" and those that are "imposed in an illegal manner," *see* Utah R. Crim. P. 22(e). Thus, even if Udy's sentence is not illegal per se, it can be challenged under rule 22(e) if it was imposed in an illegal manner.

¶25    To place in context our analysis of whether Udy's sentence was imposed in violation of rule 22(e) we briefly examine the nature of a defendant's right to allocution. In Utah, allocution is both a constitutional and statutory right. In *State v. Anderson*, 929 P.2d 1107 (Utah 1996), the supreme court explained that the right to allocution "is an inseparable part of the right to be present" guaranteed by the Utah Constitution. *See id.* at 1111; *see also* Utah Const. art. I, § 12 ("[T]he accused shall have the right to appear and defend in person and by counsel . . . ."). The supreme court later stated that *Anderson* "clearly and thoughtfully recognized a constitutionally guaranteed right to allocution." *See State v. Maestas*, 2002 UT 123, ¶ 48, 63 P.3d 621.[7] Additionally, the right to allocution

---

7. In *State v. Maestas*, 2002 UT 123, 63 P.3d 621, a plurality of the Utah Supreme Court held that a defendant has a statutory right, under rule 24(d) of the Utah Rules of Criminal Procedure, to suppress a statement made in allocution. *See id.* ¶¶ 49, 56. In doing so, the majority affirmed that *State v. Anderson*, 929 P.2d 1107 (Utah 1996), recognized that the right to allocution is guaranteed under the Utah Constitution. *See Maestas*, 2002 UT 123, ¶ 48 (citing *Anderson*, 929 P.2d at 1111); *see also id.* ¶ 141 (Russon,

(continued...)

is codified by rule 22(a) of the Utah Rules of Criminal Procedure, which provides that "[b]efore imposing sentence the court shall afford the defendant an opportunity to make a statement and to present any information in mitigation of punishment." Rule 22(a) places an obligation on the trial court "to affirmatively provide" the defendant and defense counsel an opportunity to speak in mitigation before imposing sentence. *See State v. Wanosik*, 2003 UT 46, ¶ 23, 79 P.3d 937 ("[I]t is the court which is responsible for raising the matter.").

¶26 Here, Udy argues that his sentence is illegal because it was imposed in violation of rule 22(a). Our supreme court has held "that a sentence imposed in violation of rule 22(a) of the Utah Rules of Criminal Procedure may be considered a 'sentence imposed in an illegal manner' under rule 22(e)." *State v. Samora*, 2004 UT 79, ¶ 13, 99 P.3d 858 (quoting Utah R. Crim. P. 22(e)); *see also State v. Candedo*, 2010 UT 32, ¶ 14 ("[T]he definition of illegal sentence under rule 22(e) is sufficiently broad to include constitutional violations that threaten the validity of the sentence."). Thus, if Udy was denied the right to allocution, his sentence was "imposed in an illegal manner" and can be challenged at any time.[8] *See* Utah R. Crim. P. 22(e).

B. Deprivation of the Right to Allocute

¶27 The State contends that Udy cannot prevail on his allocution claim because the trial court allowed him to speak at the First Hearing and merely exercised its discretion in cutting off his counsel's "further argument" at the Second Hearing. Even if we were convinced, as the State contends, that the two hearings comprised a single sentencing hearing resulting in one sentence, we would not agree. Trial counsel was not merely trying to continue his argument from the First Hearing; counsel and Udy were attempting to explain mitigating circumstances related to Udy's failure to pay restitution. Because the events that could affect the sentence had not yet occurred, there

---

7. (...continued)
J., concurring and dissenting) (stating that denying a defendant a right to suppress "his allocution statements in his subsequent trial would effectively infringe and render meaningless his state constitutional right to allocution").

8. Because we consider Udy's sentence under rule 22(e) of the Utah Rules of Criminal Procedure, we need not determine whether the issue was otherwise preserved.

was nothing that Udy could say at the First Hearing to mitigate the trial court's decision to send Udy to prison "forthwith" at the Second Hearing. As the trial court warned, its decision at the Second Hearing was based on Udy's failure to repay the victims during the three month period between the hearings.

¶28    In *State v. Rodrigues*, 2009 UT 62, 218 P.3d 610, the supreme court explained that allocution is not required where the trial court's decision is not "the deliberate result of judicial reasoning and decision making." *See id.* ¶¶ 28, 40 (permitting the correction of a clerical error in a sentence without further allocution where the defendant had allocuted during an earlier hearing). Unlike the clerical error corrected in Rodrigues, *cf. id.* ¶¶ 40-41, Udy's failure to pay restitution was the reason the trial court sent Udy to prison. Yet, the trial court refused to hear any statement in mitigation during the Second Hearing. Despite a number of efforts, trial counsel was not permitted to finish a sentence, let alone address the court concerning the reasons that Udy did not repay the victims. Although Udy was able to submit a letter and an email, trial counsel's attempt to explain the documents was precluded by the trial court. Yet, the trial court allowed the State to provide its opinion that the email and letter were not authentic and that Udy was being "scammed" by a "bigger fish." When trial counsel attempted to respond to the State's comments, the trial court again interrupted, stating, "No, we're not talking any more." From the record and the content of the email and letter, it appears that trial counsel was trying to explain the current status of the business deal and why Udy had not yet repaid the victims. These were the issues that drove the trial court's ultimate sentencing decision. Furthermore, trial counsel indicated that Udy expected to allocute by stating that he would "allow Mr. Udy directly to expand on the significance of [the email and letter]." Accordingly, we agree that Udy should have been permitted to speak at the Second Hearing.

¶29    In summary, Udy's statements at the First Hearing were not relevant to the issue of why leniency was appropriate despite his failure to repay the victims. Indeed, Udy's statements at the First Hearing formed the basis of the trial court's conclusion at the Second Hearing that Udy had lied to and misled the court. Under these circumstances, Udy was entitled to speak in mitigation at the Second Hearing. Because Udy's sentence was "imposed in an illegal manner," we vacate it and remand for resentencing. *See generally State v. Yazzie*, 2009 UT 14, ¶ 17, 203 P.3d 984 ("[I]llegal sentences are void and

neither create rights nor impair or affect any rights."). Consequently, we remand for resentencing, at which time Udy must be afforded his right to allocution.[9]

CONCLUSION

¶30    The trial court did not violate double jeopardy when it ordered Udy to prison at the Second Hearing.  However, Udy's sentence is void because it was imposed in an illegal manner in violation of rule 22(e) of the Utah Rules of Criminal Procedure.

¶31    Accordingly, we vacate Udy's sentences and remand for resentencing.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶32    WE CONCUR:

_____
Gregory K. Orme, Judge

_____
William A. Thorne Jr., Judge

_____

9.  Udy asks us to reinstate the first sentence.  However, Udy has cited no authority that supports that remedy under these circumstances.