2023 UT App 80

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v*
FRANKLIN JAMES,
Appellant.

Opinion
No. 20210476-CA
Filed August 3, 2023

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 201914105

Erick Grange, Attorney for Appellant

Sean D. Reyes and Emily Sopp,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

ORME, Judge:

¶1 During a consolidated change of plea hearing, Franklin James pled guilty in two criminal cases. Several months later, the district court sentenced James in both cases but did not invite James to speak on his own behalf prior to imposing sentence. James argues on appeal that the court plainly erred because it did not affirmatively provide him the opportunity to personally address the court before it pronounced sentence. We agree with James that the court violated his right to allocution. We therefore vacate James's sentence and remand for resentencing.

BACKGROUND

¶2 In 2020, the State charged James, in two separate cases, with various drug- and weapons-related felonies and associated misdemeanors. At a consolidated change of plea hearing, the parties presented the district court with a "proposed resolution" of both cases. Under the proposed plea agreement, James agreed to plead guilty to two second-degree-felony drug distribution charges and one third-degree-felony weapons charge, and the State agreed to dismiss all remaining counts. The court approved the proposed agreement and, after a plea colloquy, accepted James's guilty pleas to the three counts.

¶3 Immediately thereafter, defense counsel stated that the parties had "a joint recommendation for sentencing" and that they desired to immediately "move forward with that." Defense counsel recited that the parties were recommending that James's "prison sentences be run concurrent to each other and suspended" and "that he be placed on probation for a period of 36 months." Defense counsel further reported that James "wrote a couple of letters to the Court . . . that were very insightful about his desire to participate in treatment" and that "[i]n his previous matters he's had, he's been sent to prison and he hasn't ever had the opportunity to participate in a residential treatment program."

¶4 In response, the court initially noted, "I think I'm going to need a presentence report." The court explained that "one case has large amounts of—a brick of methamphetamine and guns and money," while the other case has "a large amount of everything," and "that's not the sort of person I typically send to a therapeutic community without some . . . compelling reason." Thus, the court chose not to sentence James at that time, instead requesting that Adult Probation and Parole (AP&P) prepare a presentence report, and the court set a date for a sentencing hearing.

¶5 The presentence report contained a recommendation in line with the parties' joint recommendation: that James "be

granted the privilege [of] probation" rather than be sent to prison. And at the subsequent sentencing hearing, defense counsel reminded the court of AP&P's recommendation and the joint sentencing recommendation, and he referred to the letters that James had written. Defense counsel then summarized that James "takes accountability for his actions and how his behavior has displayed a disregard for the life of others, but also that he desires to change." At no point during this exchange did the court invite James to address the court, and at no point did James actually address the court. Finally, the prosecutor endorsed the joint sentencing recommendation and stated that allowing James the opportunity for probation and treatment was "an investment worth taking."

¶6      The court then imposed sentence. It rejected the parties' joint recommendation and the recommendation of AP&P and instead imposed concurrent prison sentences, without affording James the opportunity for probation. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶7      James argues that "[t]he district court violated [his] right to allocution when it sentenced him without permitting [him] to personally speak at sentencing."[1] He concedes that "[t]his issue was not preserved" but contends that he should be entitled to raise it for the first time on appeal because a court's denial of a defendant's right to allocution "can be reached under . . . plain error." It is well-settled that "to demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is

---

1. James also contends that the court "abused its discretion by failing to adequately consider all relevant factors and imposing a prison sentence against the recommendations of all parties, AP&P, and the Utah Sentencing Guidelines." Because we resolve this case in James's favor on other grounds, we need not address this issue.

harmful." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (quotation simplified).

## ANALYSIS

¶8 Generally, "claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. Requiring that a party preserve its issue for appeal "serves two important policies." *Id.* "First, in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." *Id.* (quotation simplified). "Second, a defendant should not be permitted to forego making an objection with the strategy of enhancing the defendant's chances of acquittal and then, if that strategy fails, claiming on appeal that the Court should reverse." *Id.* (quotation simplified). "To serve these policies, we have held that the preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred." *Id.* (quotation simplified). James contends that the court plainly erred because the court did not give him an opportunity to speak on his own behalf prior to sentencing.

¶9 With the three-part test for plain error in mind, James argues that (1) "the district court did not allow [him] an opportunity to personally speak at sentencing," (2) "the error was obvious because the right to allocution was well settled at the time of the hearing," and (3) "this Court should reverse without requiring a showing of prejudice." We address each part of James's argument in turn.

### I. An Error Existed

¶10 We must first decide whether James has shown that the court erred. In doing so, we take this opportunity to briefly review our jurisprudence concerning a defendant's right to allocution

and whether trial courts have an affirmative duty to provide such an opportunity to criminal defendants.

¶11 "Before imposing sentence the court *must* afford the defendant an opportunity to make a statement and to present any information in mitigation of punishment, or to show any legal cause why sentence should not be imposed." Utah R. Crim. P. 22(a) (emphasis added). Thus, the right to allocution provides a defendant the opportunity "to make a statement in mitigation or explanation after conviction but before sentencing." *State v. Wanosik,* 2003 UT 46, ¶ 18, 79 P.3d 937. It "is an inseparable part of the right to be present," *State v. Anderson*, 929 P.2d 1107, 1111 (Utah 1996), and "is both a constitutional and statutory right," *State v. Udy,* 2012 UT App 244, ¶ 25, 286 P.3d 345. *See* Utah Const. art. I, § 12.

¶12 In *Wanosik*, our Supreme Court clarified a criminal defendant's absolute right to allocution prior to sentencing. There, when the defendant failed to appear for his scheduled sentencing, the trial court denied defense counsel's request for extra time to "locate the absent defendant" and "impose[d] the statutory maximum on each count, rather than the period of incarceration recommended" in the pre-sentence report. *Wanosik,* 2003 UT 46, ¶¶ 4–6. The defendant in *Wanosik* successfully appealed the trial court's sentence on multiple grounds, including, as is relevant here, that the court "violated Utah Rule of Criminal Procedure 22(a) by imposing sentence without affording . . . defense counsel an opportunity to address information relevant to sentencing."[2] *Id.* ¶¶ 8, 23. Our Supreme Court decided, based on "both the plain language of rule 22 and the approach of other jurisdictions with similar rules, that the 'shall afford' language requires trial courts to affirmatively provide the defense an opportunity to address the court" and that "both the defendant and counsel shall be

---

2. The Court's initial focus on defense counsel rather than the defendant is explained by the fact that the defendant in *Wanosik* had absconded and was sentenced in absentia. *See State v. Wanosik*, 2003 UT 46, ¶ 5, 79 P.3d 937.

affirmatively afforded an opportunity to make a statement, present any information in mitigation of punishment, or show any legal cause why sentence should not be imposed."[3] *Id.* ¶ 23. The Court concluded that rule 22(a) "encompasses both the defendant and his counsel, and trial courts have an *affirmative duty* to provide both an opportunity to address the court and present information relevant to sentencing before imposing sentence." *Id.* ¶ 25 (emphasis added).

¶13　Citing *Wanosik,* James argues that the district court plainly erred because it did not affirmatively provide him the opportunity to personally address the court prior to sentencing. The State does not suggest that the court provided him that opportunity. Instead, the State contends that the court did not plainly err and advocates for the application of our decision in *State v. Tingey,* 2014 UT App 228, 336 P.3d 608, *cert. denied,* 343 P.3d 708 (Utah 2015). As the State explains, the "'defense' refers to both the defendant and defense counsel who are treated as one unit." The State also contends that James's letters to the court satisfied his right to allocution.

¶14　In *Tingey,* a criminal defendant argued that the trial court plainly erred by violating his right to allocution prior to imposing sentence. *See id.* ¶ 7. There, "after defense counsel explained to the court his understanding of the nature of the plea agreement . . . , the court asked defense counsel, 'All right. Anything further?' to which counsel responded, 'Not at this time, your Honor,'" and the court proceeded to announce sentence. *Id.* ¶ 10 (quotation simplified). We held that "[t]his exchange constitutes a simple verbal invitation or question extended by the court, followed by a response from defense counsel, who was authorized to speak on Defendant's behalf." *Id.* We further noted that "this invitation came only after the court had asked for and received comment

---

3. In 2019, our Supreme Court amended rule 22(a) to change the phrasing "the court shall afford" to "the court must afford." *Compare* Utah R. Crim. P. 22(a) (2019), *with id.* (2018). If anything, "must" is more indicative of a mandatory directive than "shall."

from the State and, more importantly, asked defense counsel if he had 'anything further' to add, to which counsel responded, 'Not at this time, your Honor.'" *Id.* (quotation simplified). We decided that "given the context of the exchange between the court, defense counsel, and the State, the court's invitation for 'any final words' signaled to Defendant that he had an opportunity to address the court" and that the defendant's apparent reliance "on defense counsel to respond on his behalf does not invalidate the court's invitation to Defendant to address the court." *Id*. We held that the trial court's "simple verbal invitation" was a sufficient inquiry and did not amount to plain error because "the trial court fulfilled its obligation to afford Defendant his right to allocution." *Id.*

¶15   This case is much more like *Wanosik* than *Tingey*. In this case, there was no exchange between the defense and the court that included a straightforward invitation to the defense to speak, which James could reasonably have understood extended to him personally as well as to his attorney. At the sentencing hearing, defense counsel presented the court with the parties' joint sentencing recommendation. Following defense counsel's explanation of the recommendation, the State briefly addressed the court and "join[ed] in the recommendation," offering its endorsement that the recommended sentence "was an investment worth taking." Following the brief comment by the State, the court announced James's sentence, which was at odds with the joint sentencing recommendation. Unlike in *Tingey*, the court did not inquire of the defense if there was anything further it wished to add, nor did the court extend a straightforward invitation for the defense to address the court, which James could have reasonably understood was an invitation to him as well as to his attorney. For those reasons, *Tingey* does not support an affirmance in this case.[4]

---

4. The State also cites our decision in *State v. Graziano*, 2014 UT App 186, 333 P.3d 366, *cert. denied*, 343 P.3d 708 (Utah 2015), in which "the court explicitly invited the defense to allocute, saying, 'All right. Comments from the defendant or defense counsel?'" *Id.*

(continued…)

¶16   Next, the State argues that James was not denied his right to allocution "because the trial court was fully apprised of mitigating factors through letters [James] wrote to the court." While letters are a practical and useful method of communication, they are not typically an adequate means of exercising one's right to allocution. The in-person dialogue between a defendant and the sentencing judge allows the judge to gauge the defendant's sincerity, allows the court to ask for clarification of points expressed by the defendant, and permits the defendant to consult with the defendant's attorney in real time while addressing the judge. We echo the view expressed by the Seventh Circuit Court of Appeals that "the right to allocute calls for the court to address the defendant personally, and, after the other information relevant to sentencing has been presented, to permit the defendant to address the court." *United States v. Scott*, 192 F. App'x 552, 555 n.1 (7th Cir. 2006) (quotation simplified), *judgment vacated and remanded on other grounds*, 552 U.S. 1090 (2008). *See also Wanosik*, 2003 UT 46, ¶ 18 ("[T]he voice of the individual defendant is most appropriate in the presentation of a personal plea.").

¶17   James's letters to the court were written prior to his change of plea hearing and therefore before he changed his pleas and was convicted. While there was a proposed joint sentencing recommendation at James's change of plea hearing, the court opted not to sentence him at that time but rather to defer sentencing until after it received a presentence report. So, by the time of sentencing, the letters were somewhat outdated. Had the court inquired of James regarding the contents of the letters and had James responded that the views expressed in his letters had not changed and that he had nothing to add, the State's argument would be more persuasive. But that did not happen here. The State simply has not shown that James's letters to the court satisfy the demands of the right to allocution, the essence of which is to

---

¶ 6 (quotation simplified). Obviously, *Graziano* does not support the State's position here.

give the defendant the opportunity to address the court personally.

¶18  As stated in rule 22(a), "the court must afford the defendant an opportunity to make a statement and to present any information in mitigation of punishment, or to show any legal cause why sentence should not be imposed." As interpreted by our Supreme Court, rule 22(a) requires that the trial court "affirmatively provide the defense an opportunity to address the court" and that "both the defendant and counsel shall be affirmatively afforded an opportunity to make a statement, present any information in mitigation of punishment, or show any legal cause why sentence should not be imposed." *Wanosik*, 2003 UT 46, ¶ 23. Under this standard, the trial court erred because it did not explicitly provide James the opportunity to speak on his own behalf prior to announcing sentence.

## II. The Error Was Obvious

¶19  We must next determine whether the error was obvious. "To establish that the error should have been obvious to the trial court, the appellant must show that the law governing the error was clear at the time the alleged error was made." *Thomas v. Mattena*, 2017 UT App 81, ¶ 13, 397 P.3d 856 (quotation simplified). As previously noted, the trial court may not assume a passive role and expect defendants to speak up if they wish to avail themselves of their right to address the court. Instead, the trial court must make an affirmative inquiry of the defense and provide an explicit opportunity for the defense to address the court whereby "both the defendant and counsel shall be affirmatively afforded an opportunity to make a statement, present any information in mitigation of punishment, or show any legal cause why sentence should not be imposed." *State v. Wanosik*, 2003 UT 46, ¶ 23, 79 P.3d 937.

¶20  James argues that "the error was obvious because the right to allocution was well settled at the time of the hearing." As explained in Part I, James is correct. The right to allocution is

clearly stated in rule 22(a) of the Utah Rules of Criminal Procedure and firmly established in our jurisprudence. Simply put, the trial court did not affirmatively provide James the "opportunity to make a statement, present any information in mitigation of punishment, or show any legal cause why sentence should not be imposed." *Id.* The cases we refer to in Part I, among others, serve to enshrine the right to allocution in our jurisprudence. The court's error in not according James the right to allocution was an error that should have been obvious to the court.

### III. The Error Was Harmful

¶21 Having determined in Parts I and II that the trial court erred and that the error was obvious, we must now determine whether James was harmed as a result of the court's error.

¶22 James argues that when defendants demonstrate that their right to allocution has been violated, they have necessarily demonstrated harm and "this Court should reverse without requiring a showing of prejudice." James urges our adoption of the Tenth Circuit Court of Appeals' approach in *United States v. Bustamante-Conchas*, 850 F.3d 1130 (10th Cir. 2017) (en banc).[5] We find the approach compelling, and we adopt it.

---

5. Under federal law, "to demonstrate plain error, a litigant must show: (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1137 (10th Cir. 2017) (quotation simplified). Under Utah law, as previously explained, "to demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (quotation simplified).

¶23   *Bustamante-Conchas* "involve[d] a clear failure of the trial court to ask the defendant if he had anything to say on his behalf before imposing sentence—a failure to personally address the defendant and offer an opportunity to allocute." *Id.* at 1133. The appellate court noted,

> Granting defendants an opportunity to personally address the court advances several ends. First, it serves an informational function by allowing defendants to present mitigating circumstances. . . . Second, allocution permits the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence. . . . Third, requiring a sentencing judge to personally engage with a defendant enhances the appearance of fairness in the criminal justice system. . . . Allocution thus has value in terms of maximizing the perceived equity in the process.

*Id.* at 1136 (quotation simplified).

¶24   In *Bustamante-Conchas*, the court noted its prior view "that a complete denial of allocution at a defendant's initial sentencing hearing is per se or presumptively prejudicial." *Id.* at 1133. While standing by its prior view as a general matter, the court clarified "that in a rare number of cases, such errors may not result in prejudice." *Id.* "In particular," the court continued, "defendants who receive the minimum permissible sentence will be unable to demonstrate that an allocution error affected their substantial rights." *Id.* This limited exception to the usual rule is entirely logical. If a defendant received the lightest possible sentence, deprivation of his right to allocution was harmless because it would have been impossible for the defendant to have talked the court into anything less. But "a defendant who shows he has been denied the right to allocute has met his burden of demonstrating prejudice absent some extraordinary circumstance," *id.* at 1139, such as the impossibility of the court imposing a lighter sentence had it heard from the defendant as it should have. The court

further noted that in the absence of such a circumstance, "defendants satisfy this burden if a complete denial of allocution occurs at their initial sentencing hearing" and that "[t]his rule applies regardless of whether the defendant has proffered a proposed allocution statement on appeal." *Id.* at 1134.

¶25 Here, the denial of James's right to allocution does not come within the "extraordinary circumstance" exception to the general rule. James did not receive the lightest possible sentence. On the contrary, the district court imposed concurrent prison terms. And it did so in the face of an agreement between the defense and the prosecution that James should be placed on probabtion and receive treatment, which disposition was also recommended by AP&P in its presentence report. Thus, this is one of the "ordinary cases" where "defendants meet this burden [of demonstrating prejudice] simply by showing that they were denied the right to meaningfully address the court." *Id.* at 1133.

¶26 Quoting *State v. Chacon*, 962 P.2d 48 (Utah 1998), the State responds to James's argument by contending that prejudice cannot be based on mere speculation but must be a "demonstrable reality." *See id.* at 50 (quotation simplified). While we agree with that premise, an advantage of the *Bustamante-Conchas* approach is that it forecloses speculation regarding what a defendant might have said and further speculation regarding any possible effect the defendant's words would have had on the court's sentencing decision. *Cf. United States v. Luepke*, 495 F.3d 443, 451 (7th Cir. 2007) (noting that a presumption of prejudice "avoids our speculation about what the defendant might have said had the right been properly afforded him").

¶27 Because the circumstances of this case do not come within the "extraordinary circumstances" exception to the general rule of "per se or presumptive[] prejudic[e]," *Bustamante-Conchas,* 850 F.3d at 1133, we conclude that James was necessarily harmed by the court's error in not offering him the opportunity to address the court at sentencing.

CONCLUSION

¶28    "A defendant's right to allocution at sentencing is one of the oldest and most important principles in our legal system." *United States v. Jimenez*, 61 F.4th 1281, 1284 (10th Cir. 2023). James has established that the sentencing court plainly erred in denying him his right to allocution. Accordingly, we vacate James's sentences and remand for such further proceedings as may now be appropriate, consistent with this opinion.

———————