2014 UT App 60

**STATE of Utah, Plaintiff and Appellee,**

v.

**Casey Phillip PERKINS, Defendant and Appellant.**

No. 20111103–CA.

Court of Appeals of Utah.

March 20, 2014.

Lori J. Seppi and Daniel M. Torrence, for Appellant.

Sean D. Reyes and Kris C. Leonard, for Appellee.

Senior Judge RUSSELL W. BENCH authored this Opinion, in which Judges JAMES Z. DAVIS and JOHN A. PEARCE concurred.[1]

BENCH, Senior Judge:

¶ 1 Defendant Casey Phillip Perkins appeals from the amended sentence entered after he pleaded guilty to two counts of child abuse. Perkins advances multiple theories to challenge the entry of an amended judgment sometime after the original sentence was entered on the day of the sentencing hearing. We affirm.

## BACKGROUND

¶ 2 In 2009, Perkins's eight-week-old son was taken to the hospital because he was not moving one of his arms. When the child was examined at the hospital, the X-rays showed several injuries, including arm and rib fractures, that were likely inflicted at three different times. Perkins was thereafter charged with four counts of child abuse.

¶ 3 Prior to trial, the State obtained permission to present evidence of two prior bad acts: (1) evidence of Perkins's 1997 conviction for abuse of a three-year-old he was babysitting, which abuse caused permanent brain damage and other lifelong disabilities, and (2) evidence of an episode when, while in Perkins's charge, a five-year-old was left with permanent brain damage after enduring se-

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

vere head and abdominal trauma. The State also sought to present a third bad act—a prior incident involving his infant son—but Perkins successfully sought suppression of that evidence.

¶ 4 Perkins eventually pleaded guilty to two counts of child abuse. In exchange for Perkins's plea, the State dropped the remaining two charges and agreed to remain silent as to whether Perkins's sentences should run concurrently or consecutively to each other and to another prison term that Perkins was then serving. A presentence investigation report (the PSI) was also prepared, which recognized the "concerning" and repetitive nature of Perkins's criminal history but made no recommendation as to whether the sentences should run consecutively or concurrently.

¶ 5 The trial judge reviewed the PSI as well as victim impact statements from the infant victim's mother and foster mother. At the sentencing hearing, the trial judge stated,

> Well, I have to say this is one of the more troubling cases I've ever seen. I've never—in many, many years in this business I've never seen a serial child abuser like I'm looking at right now. A person who I don't know what kind of enjoyment, what kind of a fascination, I can't even imagine what it must be you get through hurting these little tiny people and it makes absolutely no sense to me. You have a history of it and now this little person has all the ages of all these different injuries you've caused and you claim here you rolled on top of him which is just absolutely absurd and you had nothing to do with this, which I can't even imagine. Quite frankly, I wish there was more I can do, I'll be honest with you and I rarely think that, but that's certainly this case because I think, I quite frankly don't think you should ever walk the streets again with what you've done to these children.
>
> What I'm going to do is I'm going to sentence you to two third degree felonies, zero to five years on each one to run concurrently with each other, as well they'll run concurrently to what you're doing down there [at the prison]. Good luck.

¶ 6 Later that day, however, the trial judge was made aware of the apparent inconsisten-

cy between his harsh comments and his order for Perkins's sentences to run concurrently instead of consecutively. The trial judge then immediately tried to locate Perkins and to bring him back to the courtroom to correct the mistake. When that attempt was unsuccessful, the trial judge then told his clerk to set the matter for his next possible criminal calendar so that he could fix the mistake. Accordingly, a notice of resentencing was prepared and entered in the record that day, setting resentencing for two weeks in the future. However, the clerk also mistakenly prepared a judgment ordering concurrent sentences, stamped the judge's name on it, and faxed it to the prison. The next day, this mistake was discovered and the clerk faxed an order to the prison explaining that the prior day's judgment was incorrect, asking that it be disregarded, and listing the resentencing date. Thereafter, a resentencing hearing was held and the trial judge explained that the ordering of concurrent sentences had been a clerical error and, over Perkins's objection, resentenced Perkins to consecutive sentences. Perkins now appeals.

ISSUES AND STANDARDS OF REVIEW

¶ 7 Perkins first argues that the trial court did not have jurisdiction to amend his sentence. Addressing this issue requires our interpretation of a rule of criminal procedure, and " '[t]he interpretation of a rule of procedure is a question of law that we review for correctness.' " *State v. Rodrigues,* 2009 UT 62, ¶ 11, 218 P.3d 610 (quoting *Brown v. Glover,* 2000 UT 89, ¶ 15, 16 P.3d 540).

¶ 8 Perkins next argues that the resentencing violated his protections against double jeopardy. This constitutional issue is a question of law, which we review for correctness. *Id.* ¶ 12.

¶ 9 Finally, Perkins argues that the trial court failed to adequately consider his history, character, and rehabilitative needs when imposing consecutive sentences. "The imposition of a sentence rests entirely within the discretion of the [trial] court, within the limits prescribed by law. As such, [w]e review the sentencing decisions of a trial court for abuse of discretion." *State v. Schweitzer,* 943 P.2d 649, 651 (Utah Ct.App.1997) (altera-

tions in original) (citations and internal quotation marks omitted).

## ANALYSIS

### I. Jurisdiction

¶10 Perkins argues that the trial court lacked jurisdiction to enter the amended sentence. "Once a court imposes a valid sentence and final judgment is entered, the court ordinarily loses subject matter jurisdiction over the case." *State v. Rodrigues,* 2009 UT 62, ¶13, 218 P.3d 610. However, rule 30 of the Utah Rules of Criminal Procedure provides that "[c]lerical mistakes in judgments ... may be corrected by the court at any time." Utah R.Crim. P. 30(b).

> "A clerical error is one made in recording a judgment that results in the entry of a judgment which does not conform to the actual intention of the court. On the other hand, a judicial error is one made in rendering the judgment and results in a substantively incorrect judgment."

*Rodrigues,* 2009 UT 62, ¶14, 218 P.3d 610 (quoting *Thomas A. Paulsen Co. v. Industrial Comm'n,* 770 P.2d 125, 130 (Utah 1989)). In determining whether an error was clerical, we generally focus on three factors: "(1) whether the order or judgment that was rendered reflects what was done or intended, (2) whether the error is the result of judicial reasoning and decision making, and (3) whether the error is clear from the record." *Id.*

¶11 As to the first factor, Perkins argues that the original judgment did reflect what was done at the sentencing hearing because it accurately captured the fact that the trial judge said the word "concurrently" when announcing the sentence. That is, Perkins argues that the error here could not be clerical because the judgment accurately reflected the words uttered by the trial judge. However, such an interpretation is too narrow, allowing for the correction of only those errors made by the individuals who actually commit the judgment to paper. *See id.* ¶¶25, 34 (determining that "the misstatement of the restitution amount and the subsequent order of restitution based on the misstatement" qualified as a clerical error); *cf. id.* ¶14 (suggesting that a clerical error could be " 'made by the court clerk, the jury foreman, counsel, a party, or the judge himself' " (quoting *Bishop v. GenTec, Inc.,* 2002 UT 36, ¶30, 48 P.3d 218)). Instead, under our " 'broad approach to correctability,' " *id.* (quoting *Bishop,* 2002 UT 36, ¶30, 48 P.3d 218), "it is ultimately the *intent* of the court or fact finder that is binding." *Id.* ¶15 (emphasis added). And that intent was expressed in the trial judge's language at sentencing, immediately before announcing Perkins's sentence: "Quite frankly, I wish there was more I can do, I'll be honest with you and I rarely think that, but that's certainly this case because I think, I quite frankly don't think you should ever walk the streets again with what you've done to these children." We think it extremely unlikely that the trial judge would express his desire that he could keep Perkins locked up forever and then in the very next breath intentionally order Perkins's sentences to run concurrently. *See generally id.* ¶23 ("We have specifically defined a judicial error as the deliberate result of the exercise of judicial reasoning and determination." (citation and internal quotation marks omitted)). We are instead convinced that the trial judge clearly intended to give Perkins the longest sentence possible and had no intention of giving him the benefit of concurrent sentences.

¶12 As to the second factor, Perkins essentially argues that the concurrent sentencing was a result of judicial reasoning and decision making simply because the trial judge ordered concurrent sentences after having heard all the evidence. This argument speculates that the trial judge must have been persuaded by facts directly contrary to those the judge himself focused his comments on during sentencing. However, we need not speculate as to which facts were persuasive to the trial judge in his sentencing determination. Immediately before announcing Perkins's sentence, the trial judge set forth the judicial reasoning supporting the decision he had made, including that this case was "one of the more troubling cases [he had] ever seen," that Perkins was "a serial child abuser," and that Perkins refused to take responsibility for his actions but was instead making up "absurd" excuses for his child's injuries. Also, at resentencing the

trial judge explained that when he walked into the original sentencing hearing, his initial intention and decision was to run Perkins's sentences consecutively.[2] Thus, we are convinced that the ordering of concurrent sentences was simply a misstatement and was not a result of the trial judge's judicial reasoning and decision making; indeed, concurrent sentencing was inconsistent with the reasoning the trial judge actually expressed when announcing his decision.

¶ 13 And as to the third factor, Perkins argues that the error is not apparent from the record because "[t]here is no indication in the record prior to judgment that the trial judge misspoke when he imposed concurrent sentences." Again, Perkins's argument is too narrow. He focuses only on the fact that both the oral and written versions of the judgment unambiguously stated that the sentences should run concurrently. Perkins again refuses to give weight to the reasoning expressed by the trial judge immediately before stating his oral judgment. Such a narrow approach would prevent us from considering anything beyond the sentence itself in determining whether an error was apparent from the record. We see no authority for so severely restricting our consideration of the trial judge's intent, which intent is what ultimately determines whether the error here is clerical in nature, *id.* ¶ 15 ("[I]t is ultimately the intent of the court or fact finder that is binding.").

¶ 14 Nonetheless, we do agree with Perkins that there must be indications of the trial judge's contrary intent on the record prior to judgment in order to allow correction of misstatements as clerical errors. *See id.* ¶¶ 19, 22, 33–34 (recognizing a clerical error where the trial judge ordered an incorrect amount of restitution but had made statements at the sentencing hearing indicating his intention to order restitution in accordance with the plea agreement); *cf. State v. Denney,* 776 P.2d 91, 93 (Utah Ct.App.1989) (refusing to change the defendant's sentence as a clerical error where "remarks made in a later hearing" were the only evidence of contrary intent). Here, strong indications of the trial judge's contrary intent are apparent from the record prior to judgment. The trial judge was very specific that this case was one of the most troubling that he had seen and that he wanted to keep Perkins incarcerated for the maximum period possible, specifically wishing that there was more he could do in sentencing and stating that Perkins should never be free to walk the streets again. We determine that such expressions clearly show that the immediately following announcement of concurrent sentences was not in harmony with the intent of the trial judge.

¶ 15 Further, the trial judge's actions immediately upon learning of his error later that day provide additional evidence of the trial judge's intent at the time of sentencing. Upon learning of his misstatement, the trial judge sought to return Perkins to the courtroom. After the trial judge was unable to secure Perkins's attendance, he requested the matter be rescheduled to the next available criminal calendar so that he could fix the mistake. Thus, a notice of resentencing was entered in the record that day, setting resentencing for two weeks in the future. And the following day, when it was discovered that the clerk had erroneously prepared a judgment and faxed it to the prison, a new fax was sent with an order asking that the prior fax be disregarded, indicating that "[t]he sentencing is incorrect" and identifying the scheduled resentencing date. All of this evidence leads to the conclusion that the trial judge misspoke when rendering the sentence and that the later resentencing was a correction of a clerical error, which rule 30(b) permits, and not an opportunity for the judge to reconsider his prior sentence, which rule 30(b) does not allow. *See* Utah R.Crim. P. 30(b).

¶ 16 In sum, we determine (1) that an order of concurrent sentences did not reflect what the trial judge intended, (2) that ordering concurrent sentencing was not a result of judicial reasoning and decision making, and

---

**2.** Further, such an intention was consistent with statutory provisions regarding concurrent and consecutive sentences. Because Perkins was apparently on parole at the time the offenses here were committed, the trial judge was required to run the new sentences consecutively to the older sentence unless the judge specifically made a finding "that consecutive sentencing would be inappropriate." Utah Code Ann. § 76–3–401(3) (LexisNexis 2012).

(3) that the record clearly shows the trial judge's intention was to make Perkins's sentence as long as possible, that is, to order consecutive sentences. Therefore the trial judge's use of the word "concurrently" instead of "consecutively" was a clerical error and the trial judge was allowed to correct his mistake.

## II. Double Jeopardy

¶ 17 Perkins next argues that his resentencing violated federal and state protections against double jeopardy, *see* U.S. Const. amend. V; Utah Const. art. I, § 12; Utah Code Ann. § 77–1–6(2)(a) (LexisNexis 2012). However, "[c]lerical errors do not ordinarily infringe on protections against double jeopardy because the correction of the error rarely upsets a defendant's expectation of finality in the original proceedings." *State v. Rodrigues*, 2009 UT 62, ¶ 36, 218 P.3d 610. Thus, " 'the Double Jeopardy Clause only proscribes resentencing where the defendant has developed a legitimate expectation of finality in his original sentence.' " *Id.* (quoting *State v. Maguire*, 1999 UT App 45, ¶ 8, 975 P.2d 476).

¶ 18 Perkins argues that he had a legitimate expectation of finality in the sentence because the trial judge clearly said "concurrently," that statement was reduced to a written order, and Perkins was transported back to prison to start serving his sentence. But again, when we look to the surrounding circumstances, we are not convinced that any expectation of finality on the part of Perkins was legitimate. The trial judge made it clear that he wished he could sentence Perkins even more harshly than the law allowed and that Perkins should never walk the streets again. Considering this severity of expression, Perkins should have anticipated that concurrent sentencing was contrary to the trial judge's statements and that the trial judge had actually intended to say "consecutively" instead of the similarly sounding term "concurrently." Further, the timing of the discovery of the mistake weighs against Perkins having developed any legitimate expectation of finality. Although the judgment was faxed to the prison that evening, the following day the prison received a second fax stating that the judgment faxed the prior evening was incorrect, that it should be dis-

regarded, and that a resentencing date had been scheduled. Given these facts, Perkins did not have a legitimate expectation of finality in the original judgment and the resentencing did not violate double jeopardy protections.

## III. Factors Supporting Consecutive Sentences

¶ 19 Perkins argues that the trial judge's decision to impose consecutive sentences was an abuse of discretion because he failed to adequately consider his history, character, and rehabilitative needs. Certainly "a trial court may abuse its discretion in imposing a sentence without considering all the legally relevant factors." *State v. Schweitzer*, 943 P.2d 649, 651 (Utah Ct.App. 1997). However, we do not agree that the trial judge failed to adequately consider these factors here.

¶ 20 Simply because mitigating factors were ultimately outweighed by aggravating factors does not indicate inadequate consideration.

> [T]he exercise of discretion in sentencing necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if it can be said that no reasonable [person] would take the view adopted by the trial court. Additionally, [t]his discretion is not to be surrendered to a mathematical formula by which numbers of circumstances rather than weight of circumstances are determinative. The overriding consideration is that the sentence be just. One factor in mitigation or aggravation may weigh more than several factors on the opposite scale.

*State v. Wright*, 893 P.2d 1113, 1120–21 (Utah Ct.App.1995) (alterations in original) (citations and internal quotation marks omitted). The mitigating information on which Perkins relies was all contained in the PSI or mentioned at the sentencing hearing. And we cannot say that these factors were so mitigating that no reasonable person would have imposed consecutive sentences under the circumstances here. Evidence that Perkins had certain education and training, had a desire to further his education, could run a business, and was doing well in an alcoholism

treatment program in prison may not have carried much weight in mitigation against the court's grave concerns about Perkins's repeated episodes of child abuse, some of which had left children permanently damaged. Further, the PSI reports Perkins as being "a serious threat of violent behavior" and pointed to his repeated and "unusually extensive" abuse of "particularly vulnerable" victims. Although Perkins did state that he felt sorry for everyone involved, he continued to argue that the injuries to his son were due to a vitamin D deficiency and that he had not done anything wrong—an explanation that the trial judge considered "absolutely absurd." Thus, considering the severity of the abuse, Perkins's history of abuse, and Perkins's continued denial of responsibility for the abuse, we do not agree that it was an abuse of discretion for the trial judge to sentence Perkins for consecutive sentences.

## CONCLUSION

¶ 21 We determine that the trial court had jurisdiction to resentence Perkins due to a clerical error, that such resentencing did not violate prohibitions against double jeopardy, and that the sentence ultimately given was not an abuse of the trial court's discretion. We therefore affirm.