**2018 UT App 176**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
GREGORY EMMANUEL WILLIAMS,
Appellant.

Opinion
No. 20160483-CA
Filed September 13, 2018

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 161900235

Alexandra S. McCallum and Lance L. Talakai,
Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

HARRIS, Judge:

¶1 After Gregory Emmanuel Williams pled guilty to three separate property crimes, the district court sentenced him to prison. He appeals his sentence, arguing that one of his convictions was improperly enhanced from a misdemeanor to a felony, and that the court violated Williams's rights against double jeopardy and abused its discretion by sentencing him to prison on the other two convictions. We agree with Williams that the sentence on his first conviction was improperly enhanced, and therefore vacate the district court's sentencing order on that count and remand for resentencing. We affirm Williams's sentence on his other two convictions.

BACKGROUND

¶2     In 2014, Williams broke into a vehicle in a parking garage and stole property from the vehicle. Williams's actions were captured by a surveillance camera, and law enforcement officers later apprehended Williams with the stolen property in his possession. After being charged with multiple offenses, Williams pled guilty to a single charge: burglary of a vehicle. Under Utah law, burglary of a vehicle is a class A misdemeanor, and there are no statutory provisions permitting enhancement of the offense. *See* Utah Code Ann. § 76-6-204(2) (LexisNexis 2017). Both the prosecutor and Williams's attorney, however, were apparently under the mistaken impression that the offense could be enhanced due to prior convictions, and agreed that Williams—who had similar prior convictions—was pleading guilty to a third-degree felony. The court entered the plea as a third-degree felony, and sentenced Williams accordingly: the court imposed a zero-to-five-year prison term but suspended that sentence and ordered Williams to serve a year in jail and complete an inpatient treatment program for drug addiction upon release. Williams was subsequently released to an inpatient treatment program, and placed on probation.

¶3     In late 2015, while Williams was still on probation, law enforcement officers found Williams sleeping in a vehicle with the motor running. The officers saw prescription amphetamines, later determined to be prescribed to someone other than Williams, in plain view in the vehicle, and observed that Williams was incoherent and struggling to stay awake. Officers determined that Williams was unable to safely perform field sobriety tests and therefore placed him under arrest; they later also found methamphetamine, syringes, and stolen property in the vehicle. After initially being taken into custody, Williams was released pending trial.

¶4     Approximately one month later, law enforcement officers performing an exterior patrol of the Matheson Courthouse in Salt Lake City heard the sound of breaking glass. The officers

went towards the sound and observed Williams "jumping through the back passenger side window" of a vehicle. The officers then witnessed Williams leaving the vehicle with "both arms full of property." At this point, officers identified themselves and told Williams to stop. In response, Williams dropped the property, got into a vehicle parked nearby, and drove away from the officers. The vehicle, which turned out to be stolen, ran out of gas only a few blocks away, and Williams was subsequently apprehended.

¶5    Facing charges for both of the 2015 incidents, Williams pled guilty to one count of theft by receiving stolen property, a third-degree felony, and one count of attempted theft, a third-degree felony, in exchange for dismissal of all the remaining charges. At sentencing, after reviewing Williams's record, the district court indicated that it was inclined to "try something else" other than prison and inquired about placing Williams in "The Other Side Academy," a local rehabilitation program. After some discussion, the court then indicated that it would not send Williams to prison, but instead would suspend his prison terms and place Williams on probation for five years, and require Williams to, among other things, serve up to one year in jail and then enter into The Other Side Academy and successfully complete the program there. The court then asked if anyone had any questions about the sentence, and the probation officer asked what would happen if The Other Side Academy was not willing or able to take Williams, and whether that would constitute a violation of the terms and conditions of probation. In response, the court stated that it was "not sure if anything but prison is an option if" the program refused to accept Williams, and that the issue raised regarding whether that would constitute a probation violation was "a valid concern." The court then stated: "Let's not finish sentencing here. I will continue sentencing out for 60 days so we can get a firm answer" about whether Williams would be accepted into the program. The court then told Williams that it was trying to get him in the program but that, if Williams was unable to obtain admission, the court did not "know another option other than prison." The

court then continued the sentencing hearing, stating specifically that it was "continuing everything in this sentencing." The court entered no order imposing sentence following that hearing.

¶6    A few weeks later, at the continued sentencing hearing, Williams revealed that he had been unable to get into The Other Side Academy. Williams requested that the court nonetheless place him on probation and permit him to participate in a different treatment program. The court declined that invitation, and instead sentenced Williams to two concurrent zero-to-five-year prison terms for both of Williams's convictions stemming from the 2015 incidents. The court also noted that Williams was on probation for the 2014 vehicular burglary, which had been entered as a third-degree felony, and sentenced Williams to a concurrent zero-to-five-year prison term as a consequence of violating the terms of his probation on that charge.

## ISSUES AND STANDARDS OF REVIEW

¶7    Williams appeals, and asks us to consider three issues. First, Williams contends that his conviction for vehicular burglary was unlawfully enhanced from a class A misdemeanor to a third-degree felony.[1] Whether an imposed sentence is illegal presents a question of law that we review for correctness. *State v. Thorkelson*, 2004 UT App 9, ¶ 9, 84 P.3d 854.

¶8    Second, Williams contends that he obtained "a legitimate expectation of finality" in the district court's initial imposition of probation on the 2015 counts, and that the court violated his constitutional protections against double jeopardy by later

---

1. Williams also contends that the district court erred by revoking his probation on this first count without first holding a probation revocation hearing. Because we vacate Williams's sentence with respect to that conviction and remand for resentencing, we need not consider Williams's other argument.

sentencing him to prison. Because Williams did not raise this issue before the district court, he asks us to review it for plain error. To prevail on a claim of plain error, Williams must show that: "(i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) . . . absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Bedell*, 2014 UT 1, ¶ 20, 322 P.3d 697 (quotation simplified).

¶9    Third, Williams contends that the district court abused its discretion when it sentenced Williams to prison instead of probation.[2] We review a district court's sentencing decision for abuse of discretion. *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167.

ANALYSIS

A

¶10    Williams first contends that the district court imposed an illegal sentence when it accepted his incorrectly enhanced conviction for burglary of a vehicle and thus sentenced him for that offense as a third-degree felony as opposed to a class A misdemeanor. In its brief, the State concedes the point. *See State v. Patience*, 944 P.2d 381, 388 (Utah Ct. App. 1997) (stating that when a defendant enters into a plea agreement that contains a "mistake as to the law in effect at the time the parties entered into the plea agreement," and that mistake causes the defendant to receive a harsher sentence than he would have received if the plea agreement correctly represented the law, the defendant is "entitled to [the] lesser criminal punishment[] mandated by statute[]"). The parties also agree that the remedy in such cases is

---

2. While Williams makes this argument with regard to all three counts, we need consider this argument only as it pertains to the second and third counts, because we vacate Williams's sentence on his first conviction for other reasons.

remand to the district court for resentencing pursuant to the correct law. *Id*.

¶11    In this case, Williams pled guilty to burglary of a vehicle, which is defined by statute as "a class A misdemeanor." Utah Code Ann. § 76-6-204(2). Under Utah law, no statute permits enhancing that offense. Despite this, Williams pled to the offense as a third-degree felony, and the district court sentenced him as if the offense were a third-degree felony. This was an illegal sentence, and Williams is thus entitled to the lesser criminal punishment provided for by the applicable statute. We therefore vacate Williams's sentence for burglary of a vehicle stemming from the 2014 incident, and remand that count for resentencing as a class A misdemeanor.

B

¶12    Williams next contends that the district court violated his state and federal rights against double jeopardy when it sentenced him to prison after he "gained a legitimate expectation of finality" in "his original probationary sentences." On this record, we find his argument unpersuasive.

¶13    Both the United States and Utah Constitutions contain provisions that "prohibit the state from placing an individual twice in jeopardy for the same offense." *See Bernat v. Allphin*, 2005 UT 1, ¶ 10, 106 P.3d 707; *see also* U.S. Const. amend. V; Utah Const. art. 1, § 12. These provisions embody "three separate protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense." *Bernat*, 2005 UT 1, ¶ 11. Resentencing, however, does not always "implicate the double jeopardy protection from multiple punishments." *See State v. Rodrigues*, 2009 UT 62, ¶ 36, 218 P.3d 610 (quotation simplified); *see also State v. Prion*, 2012 UT 15, ¶ 64, 274 P.3d 919 (stating that "[t]he [federal] constitution leaves more leeway for the state to reconsider a defendant's sentence

than to reevaluate his guilt"). Resentencing violates double jeopardy protection only "where the defendant has developed a legitimate expectation of finality in his original sentence." *Rodrigues*, 2009 UT 62, ¶ 36 (quotation simplified).

¶14 Generally, a defendant develops a reasonable expectation of finality in a sentence once that sentence has been announced or ordered by the district court. *See State v. Udy*, 2012 UT App 244, ¶ 18, 286 P.3d 345. However, "[w]here the [district] court expressly indicates that the sentence announced is subject to change, it is not reasonable to expect that the sentence is final." *Id*. Moreover, "in cases where the court has expressly declined to impose a final sentence until it has had the opportunity to review" further information, "jeopardy does not attach until the court issues a final signed order." *Id*. (quotation simplified).

¶15 In this case, Williams argues that he gained a legitimate expectation of finality in being sentenced to probation with regard to his two convictions stemming from the 2015 incidents when the district court initially indicated that it would sentence Williams to two suspended prison terms and place him on probation. Because of this, Williams argues that it was error for the court to later sentence him to prison for those same convictions. We disagree, because Williams's arguments are foreclosed by our previous decisions in *Udy*, 2012 UT App 244, and *State v. Perkins*, 2014 UT App 60, 322 P.3d 1184.

¶16 In *Udy*, a defendant being sentenced for securities fraud represented to the court that he was in the middle of a business deal that would allow him to pay back some of his victims within sixty days. *Udy*, 2012 UT App 244, ¶¶ 1–3. The court was skeptical, but decided to give the defendant a chance to make good on that representation. The court announced that it would refrain from sending the defendant to prison, and would instead impose a short jail sentence and probation, if the defendant could make substantial restitution payments within the next three months. *Id.* ¶ 4. However, the court then warned the defendant that this sentence would be subject to change if the

defendant did not pay his victims within the three-month period. *Id*. While a sentencing order was prepared memorializing this arrangement, the court did not sign it. *Id.* ¶ 5. Three months later, the defendant had made no substantial restitution, and the district court revisited its former comments. *Id.* ¶¶ 6–7. Noting that it had initially indicated that it would impose a short jail sentence followed by probation, the court rescinded that statement and sentenced the defendant to lengthy prison terms. *Id.* ¶¶ 7–9. The defendant appealed, arguing that he had gained a reasonable expectation of finality in the sentence when the court first articulated it. *Id*. ¶¶ 11–12. On appeal, this court held that, because the district court had warned the defendant that its initial sentencing decision might be subject to change and because it did not sign an order following the first hearing, the defendant did not gain a legitimate expectation of finality in the sentence the court announced. *Id*. ¶ 18.

¶17    In *Perkins*, a defendant pled guilty to two counts of child abuse. *Perkins*, 2014 UT App 60, ¶ 1. At the sentencing hearing, the district court expressed its view that the defendant should receive the maximum sentence possible, stating that "[q]uite frankly, I wish there was more [that] I [could] do [in sentencing the defendant] . . . . I quite frankly don't think [the defendant] should ever walk the streets again." *Id*. ¶ 5. The court then orally sentenced defendant to two zero-to-five-year terms and ordered that they run concurrently. *Id*. Later that day, the discrepancy between the court's comments and its order of concurrent sentences was brought to the court's attention. *Id.* ¶ 6. The court immediately ordered a follow-up hearing. *Id.* However, the court's clerk "mistakenly prepared a judgment ordering concurrent sentences, stamped the judge's name on it, and faxed it to the prison." *Id*. The court became aware of the mistake the next day, and notified the prison that the order was incorrect. *Id.* At the follow-up hearing, the court sentenced the defendant to consecutive zero-to-five-year prison terms. *Id*. The defendant appealed, arguing that he gained a legitimate expectation of finality in his sentence when the district court orally imposed the sentence and then issued a signed sentencing order

memorializing the sentence. *Id*. ¶ 18. On appeal, this court disagreed, holding that, because the judge's preference for a maximum sentence was so strongly conveyed at the first hearing, the defendant "should have anticipated that concurrent sentencing was contrary to the trial judge's statements and that the trial judge had actually intended to say 'consecutively' instead of the similarly sounding term 'concurrently.'" *Id.* ¶ 18. Further, we noted that the sentencing order did not engender a legitimate expectation of finality in the defendant because "the following day the prison received a . . . fax stating that the [sentencing order] was incorrect." *Id*. Accordingly, we held that the defendant had never gained a legitimate expectation of finality in his sentence. *Id*.

¶18   The facts set forth in *Udy* and, especially, *Perkins* represent circumstances that seem far more likely to have engendered a reasonable expectation of finality in a sentence than the facts presented here. In both *Udy* and *Perkins*, the sentencing courts orally imposed sentences which the defendants began serving, and in *Perkins* the court even issued an order memorializing its sentence. *See Udy*, 2012 UT App 244, ¶¶ 4–7; *Perkins*, 2014 UT App 60, ¶ 6. But in both of those cases, the defendants were held not to have gained a legitimate expectation of finality in their sentences because the conduct of their respective sentencing courts should have put them on notice that the sentences issued may be subject to change or incorrect. *See Udy*, 2012 UT App 244, ¶ 18; *Perkins*, 2014 UT App 60, ¶ 18.

¶19   In this case, Williams had even less reason than the defendants in either *Udy* or *Perkins* to expect that the district court's oral sentence was final. Here, the court did not ever sign a sentencing order memorializing the sentence Williams relies upon; indeed, the court modified its sentence just minutes after articulating it, and did so in response to input it received in response to its own question as to whether there were "[a]ny questions about the sentence." The court ended the hearing by clearly stating that it was "continuing everything in this sentencing" in order to allow time for Williams to explore

whether he could be admitted into The Other Side Academy, and warned Williams that it was unaware of "another option other than prison" if Williams were unable to gain admission into the program.

¶20 Under these circumstances, especially in light of *Udy* and *Perkins*, we simply cannot conclude that Williams formed a legitimate expectation of finality in the probation sentence the court articulated at the hearing. Accordingly, the court did not violate Williams's double jeopardy protections at all, let alone commit plain error, when it sentenced Williams to prison instead of probation at the continued sentencing hearing.

C

¶21 Finally, Williams contends that the district court abused its discretion when it sentenced him to prison, asserting that the court failed to adequately weigh several "factors justifying probation." A court's sentencing decision "will not be overturned unless it exceeds statutory or constitutional limits, the judge failed to consider all of the legally relevant factors, or the actions of the judge were so inherently unfair as to constitute abuse of discretion." *State v. Killpack*, 2008 UT 49, ¶ 59, 191 P.3d 17 (quotation simplified). Williams maintains that, in this case, the district court "failed to adequately weigh his character, attitude, and rehabilitative needs before denying him the opportunity for a non-prison sentence." Williams also maintains that, despite his crimes, he was "committed to addressing his underlying issues of drug addiction [and] lack of social skills and life skills." Williams argues that this commitment was apparent because he had researched treatment programs and was willing to "take advantage of programming at the jail." Williams further asserts that prison is "not conducive to his rehabilitative needs" and argues that, for all these reasons, the district court "did not properly weigh the circumstances" when it sentenced him to prison.

¶22 We disagree. In doing so, we note the "wide latitude and discretion" we normally afford district courts in sentencing. *State v. Woodland*, 945 P.2d 665, 671 (Utah 1997). A sentencing court abuses its discretion only "if it can be said that no reasonable person would take the view adopted by the [sentencing] court." *Valdovinos*, 2003 UT App 432, ¶ 14 (quotation simplified). Here, Williams cannot satisfy that standard. Notably, Williams does not allege that the district court failed to consider any factor necessary for sentencing. Instead, Williams merely alleges that the district court failed to "adequately weigh" the various factors that Williams argues warranted probation. This is not sufficient to persuade us that "no reasonable person" would have sentenced Williams to prison instead of probation, especially considering Williams's criminal history and poor recent supervision history.

¶23 Accordingly, the district court did not abuse its discretion when it sentenced Williams to prison instead of probation with respect to his convictions related to the two 2015 incidents.

CONCLUSION

¶24 Because the district court did not violate Williams's double jeopardy rights and did not abuse its discretion in sentencing him to prison, we affirm Williams's sentences for his two convictions (theft by receiving stolen property, and attempted theft) stemming from the 2015 incidents. Because Williams's sentence for his 2014 vehicular burglary conviction was predicated on a legal error, we vacate that sentence. We remand this case for the limited purpose of resentencing on the 2014 vehicular burglary conviction.

———————