**2019 UT App 50**

THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ABISAI MARTINEZ-CASTELLANOS,
Appellant.

Opinion
No. 20130432-CA
Filed April 4, 2019

Fourth District Court, Nephi Department
The Honorable M. James Brady
No. 101600146

Linda M. Jones and Noella A. Sudbury, Attorneys
for Appellant

Sean D. Reyes and Christopher D. Ballard, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGE DAVID N. MORTENSEN concurred. JUDGE GREGORY K. ORME
concurred specially, with opinion.

APPLEBY, Judge:

¶1    This case is on remand from the Utah Supreme Court. Abisai Martinez-Castellanos was convicted of two counts of possession of or use of a controlled substance, one count of possession of drug paraphernalia, and one count of driving with a controlled substance in the body after a Utah Highway Patrol trooper (Officer) found drugs and drug paraphernalia in his car during a traffic stop.

¶2    Martinez-Castellanos appealed his convictions to this court, arguing that his trial attorney (Trial Counsel) was ineffective during jury selection and for failing to adequately litigate a motion to suppress evidence. He also

argued that the district court erred in post-trial proceedings in which separate conflict counsel was appointed to represent Martinez-Castellanos on whether Trial Counsel was ineffective during the motion to suppress stage.

¶3     On appeal, this court determined that, although each of Martinez-Castellanos's claims constituted error, based on the lack of sufficient prejudice, none of those errors warranted reversal on its own. We made that determination, in part, because his claims regarding the motion to suppress required a showing that the motion was meritorious, and the lack of representation that he received on that motion made us reluctant to resolve the issue based on the facts in the record. We nonetheless reversed and remanded for a new trial because the cumulative effect of the errors undermined our confidence that Martinez-Castellanos received a fair trial.

¶4     On certiorari, the Utah Supreme Court reversed our decision, concluding that, without a determination that the motion to suppress was meritorious, two of the three errors could not have caused Martinez-Castellanos any harm and therefore could not cumulate into reversible error. But the court noted that, with such a determination, each of those errors would support a reversal on its own. Thus, the court remanded the case for us to determine the narrow issue of whether the motion to suppress was meritorious.

¶5     Based on the record and arguments before us, we conclude that the motion to suppress was not meritorious. Specifically, Martinez-Castellanos has failed to demonstrate a reasonable probability that the motion would have been granted but for Trial Counsel's ineffective assistance. We therefore affirm Martinez-Castellanos's convictions because the errors in the district court did not result in sufficient prejudice to warrant reversal. But because of an error in Martinez-Castellanos's sentence for one of the counts of possession of a controlled substance, we vacate his sentence on that count and remand for the district court to correct the error.

BACKGROUND

¶6 During a traffic stop in 2010, Officer discovered drugs and drug paraphernalia in Martinez-Castellanos's car.[1] Officer arrested Martinez-Castellanos and obtained a blood sample that later tested positive for a marijuana metabolite at a level consistent with recent use. The State charged Martinez-Castellanos with two counts of possession or use of a controlled substance, one count of possession of drug paraphernalia, and one count of driving with a controlled substance in the body.

¶7 Before trial, Trial Counsel filed a motion to suppress all evidence seized "at the time of [Martinez-Castellanos's] arrest," including the drugs and drug paraphernalia found in the car and the blood sample. The motion asserted that this evidence "was seized in violation of Martinez Castellanos's constitutional rights to be free from unreasonable searches and seizures." In the motion, Trial Counsel requested an evidentiary hearing "to determine if appropriate consent was given and, if there was no consent given, that all evidence seized be suppressed and not be admitted as evidence in any proceeding hereafter."

¶8 A week after Trial Counsel filed the motion to suppress, the district court held an evidentiary hearing on the motion, at which Officer was the only witness. Officer first discussed his relevant "training and experience with drug interdiction and detection." He said he had "been an officer for about 20 years in various capacities," and had "been on the Utah Highway Patrol drug and interdiction squad since 2001." He had "been through numerous training classes associated with the interdiction

---

1. We limit our discussion of the facts to those relevant to the issue before us. For a more complete recitation of facts, see *State v. Martinez-Castellanos*, 2017 UT App 13, ¶¶ 2–24, 389 P.3d 432, *rev'd*, 2018 UT 46, or *State v. Martinez-Castellanos*, 2018 UT 46, ¶¶ 5–31, 428 P.3d 1038.

squad" and was a certified "drug recognition expert" as well as a drug-recognition-expert "instructor."

¶9     Next, Officer detailed the traffic stop. He said he initially stopped Martinez-Castellanos because the registration stickers on his California license plates did not comply with California law. And when Officer "first walked up to the car," he noticed Martinez-Castellanos making "jittery movements." Martinez-Castellanos handed Officer the car's registration and "an expired Colorado driver's license," assuring Officer that "he had a valid Utah license" but "just didn't have it with him." The registration revealed that, although the car "was properly registered . . . , the proper stickers weren't put on it yet." Officer and Martinez-Castellanos then "had a conversation about" the improper registration stickers.

¶10     During the conversation, Officer noticed again that Martinez-Castellanos "was a little bit jittery." That is, he had "rapid speech and rapid . . . jittery movements." This made Officer "a little bit concerned that he might have been on some type of stimulant." Officer testified, "[B]ased on my training and experience as a police officer and dealing with thousands of cars that I've stopped in my career, this made me . . . [think] he was under the influence of something." According to Officer, Martinez-Castellanos's behavior was "more . . . than what you'd expect based upon nervousness of a driver." He explained that, in his experience, "there's a difference" between "nervousness" and a person who is "jittery" and "talking really fast."

¶11     On cross-examination, Officer admitted he had never "seen [Martinez-Castellanos] before" and did not "know anything at all about him" other than what he observed during the stop. But he said, "[B]ased on all the people I arrest for stimulants and deal with," Martinez-Castellanos's "jittery movements" and "rapid speech" "[made me think] he could have been under [the influence of] stimulants."

¶12     After informing Martinez-Castellanos that his registration stickers were improper, Officer returned to the patrol vehicle

and "ran checks," which confirmed that Martinez-Castellanos had a valid Utah driver license. But the report also revealed that Martinez-Castellanos "had a criminal history," including "drug offenses." Specifically, he had miscellaneous theft charges dating back to 1997, a charge from 2001 that led to a felony conviction for controlled substance possession, a felony charge for controlled substance possession from 2006, and a 2007 probation revocation for possession of a controlled substance. Officer said that Martinez-Castellanos's criminal history "heightened [his] suspicions that [Martinez-Castellanos] might be [under] the influence of something."

¶13 Officer then returned to Martinez-Castellanos's car and, based on his suspicion of impairment, told Martinez-Castellanos he was going to perform "field sobriety tests" because "he was bouncing around a little bit." On cross-examination, Trial Counsel asked Officer to clarify "the basis for doing the field sobriety tests." Officer said the main "reason for doing it" was the "jittery movements" and "rapid speech," which led him to believe that Martinez-Castellanos was under the influence of "stimulants." Further, although Martinez-Castellanos's criminal history "wasn't the reason [he] did it," he said the prior drug-related activity "added to [his] suspicions."

¶14 Upon re-approaching the car, Officer asked Martinez-Castellanos to exit the vehicle and then performed various sobriety and drug-recognition tests. Based on those tests, Officer concluded that Martinez-Castellanos was under the influence. Officer arrested Martinez-Castellanos and proceeded to search the car, discovering the drugs and drug paraphernalia. Later, at the jail, Martinez-Castellanos's blood tested positive for marijuana at a level consistent with recent use.

¶15 Officer's "dash-cam" filmed the traffic stop, but Trial Counsel did not review the video before the hearing. Following Officer's testimony, Trial Counsel requested the video, and the district court instructed counsel for the State to arrange for him to obtain it. The court then said, "Many

times in these types of motions, we have an evidentiary hearing, and then the parties, based on the evidence, sometimes like to submit a brief." And the judge asked counsel for both parties, "[I]f you wanted me to simply make rulings based on what I've heard, or if you intended to brief this before I make a decision." Trial Counsel said he "would like to . . . submit a brief on the matter" after reviewing a transcript of the suppression hearing as well as the dash-cam video.

¶16    The court set a briefing schedule, allowing thirty days for Trial Counsel to submit a brief in support of the motion to suppress and fifteen days for the State to respond. Trial Counsel did not file a brief. A week after the deadline, the court granted Trial Counsel's request for additional time, but Trial Counsel again failed to meet the deadline. The State then filed a memorandum in opposition to the motion to suppress, and Trial Counsel did not respond to it. The dash-cam video was attached to the State's memorandum.

¶17    After receiving the State's opposition, the court issued an order denying the motion. It said, "[H]aving reviewed testimony given [at the hearing] and [the State's] memorandum, the Motion to Suppress is hereby denied." Trial Counsel filed a motion to set aside the decision to deny the motion to suppress. He attached a transcript of the evidentiary hearing, and again requested time to file a brief in support of the motion to suppress. The court allowed Trial Counsel an additional week. Trial Counsel again failed to meet the deadline, and the court reinstated its order denying the motion to suppress.

¶18    Two days before trial, Trial Counsel filed a motion to dismiss in which he renewed the motion to suppress. He asserted that the dash-cam video demonstrated there was "no basis" for the stop, but he did not file a supporting memorandum. The court denied the motion. Following a one-day trial, a jury convicted Martinez-Castellanos of two felonies for possession or use of a controlled substance and two related misdemeanors.

¶19   After trial, the district court appointed conflict counsel to represent Martinez-Castellanos in post-trial proceedings regarding Trial Counsel's failure to file a memorandum in support of the motion to suppress following the evidentiary hearing and whether those actions constituted ineffective assistance of counsel. The court specifically identified Trial Counsel's failure to adequately litigate the issue of whether "there was reasonable suspicion" when Officer had Martinez-Castellanos "step out of the car and . . . perform . . . field sobriety tests."

¶20   About one month later, conflict counsel submitted a memorandum captioned "Amicus Brief." The brief argued that Trial Counsel's failure to file a supporting memorandum did not prejudice Martinez-Castellanos. Specifically, it said that the court's denial of the motion to suppress, "with or without legal memorandum, is a finding and conclusion of law that the State met its burden in establishing that the evidence was obtained legally."

¶21   The court agreed with the position articulated by conflict counsel, withdrew its notice, and re-instated Trial Counsel to represent Martinez-Castellanos in the remaining proceedings. The court noted conflict counsel's opinion that "it was the Court's duty to make its decision based on the evidence presented" and said, "I can understand his position on that."

¶22   Martinez-Castellanos was sentenced to zero to five years, but the court suspended that sentence and placed him on probation. Trial Counsel then filed a motion for a judgment notwithstanding the verdict. In the motion, he requested that the court suppress the evidence from the traffic stop. But the motion once again did not include a supporting memorandum and Trial Counsel did not flesh out the constitutional issues raised in the motion. Instead, Trial Counsel attached the transcripts of the preliminary hearing, the suppression hearing, and Officer's trial testimony. He specifically noted "a substantial change of [Officer's] testimony regarding the reason for the stop and the

time and delay in the stop." And he asserted that the order denying the motion to suppress "should be set aside and reconsidered because of the new testimony that was offered at trial." Without explanation, the court denied the motion.

¶23   Martinez-Castellanos appealed his convictions to this court. *State v. Martinez-Castellanos*, 2017 UT App 13, 389 P.3d 432, *rev'd*, 2018 UT 46, 428 P.3d 1038. He raised three issues. First, he argued "he was denied the right to participate in the jury-selection process." *Id.* ¶ 25 (quotation simplified). Second, he argued that Trial Counsel provided ineffective assistance of counsel by failing to file a proper motion to suppress evidence seized during the traffic stop. *Id.* ¶ 26. Third, he argued "that the district court erred in failing to ensure that he had the effective assistance of counsel at all stages of the proceedings." *Id.* (quotation simplified).

¶24   A majority panel of this court determined that each of Martinez-Castellanos's claims constituted error. *Id.* ¶ 77. But we concluded that none of the errors independently warranted reversal because Martinez-Castellanos had not shown sufficient prejudice. *Id.* ¶ 78. We noted that a showing of prejudice for two of his claims depended on whether the motion to suppress was meritorious. *Id.* ¶¶ 73–74. That is, Martinez-Castellanos was required to demonstrate a reasonable probability that "a proper motion would have resulted in suppression of the evidence" and "the verdict would have been different absent the excludable evidence." *Id.* ¶ 74 (quotations simplified).

¶25   On that issue, we noted that both parties' arguments "appear to have some merit, and we would ordinarily go on to resolve the issue based on the facts in the record." *Id.* ¶ 76. But we were "reluctant to resolve the issue . . . particularly because it was so poorly developed in the trial court." *Id.* Based on this concern, we did not determine whether the motion was meritorious. *Id.* ¶¶ 74–76. We nonetheless reversed and remanded for a new trial based on our conclusion that the cumulative effect of the errors undermined our confidence that Martinez-Castellanos received a fair trial. *Id.* ¶ 81.

¶26   On certiorari, the Utah Supreme Court reversed our decision, determining that we erred in concluding cumulative error warranted reversal. *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 55, 428 P.3d 1038. The court explained that "[w]ithout a determination that the motion to suppress is meritorious, at least two of the three errors at issue cannot conceivably cause harm to [Martinez-Castellanos], so they cannot cumulate into reversible error." *Id.* ¶ 4. But the court also said that "if his motion to suppress would have been successful had it been argued before the [district] court, then . . . it would have created a certainty of a different result." *Id.* ¶ 53. Thus, it remanded the case for us to determine the narrow issue of whether Martinez-Castellanos's motion to suppress was meritorious. *Id.* ¶ 54.


ANALYSIS

I. Motion to Suppress

¶27   On remand, we must determine whether Martinez-Castellanos's motion to suppress the traffic stop and blood draw evidence was meritorious. *See State v. Martinez-Castellanos*, 2018 UT 46, ¶ 50, 428 P.3d 1038. To prevail on this issue, Martinez-Castellanos must demonstrate "a reasonable probability" that the motion would have been granted but for Trial Counsel's failure to adequately litigate his Fourth Amendment claim. *See State v. Mitchell*, 2013 UT App 289, ¶ 12, 318 P.3d 238. To that end, he argues that Officer unreasonably extended the scope of the traffic stop to "investigate [him] for substance abuse and to search the car." Specifically, he asserts that, under "the totality of the circumstances," there "is insufficient [evidence] to justify an extended detention."

¶28   We are not persuaded that this claim is meritorious. Based on the record and arguments before us, we conclude that Officer's actions were justified by a "reasonable suspicion" that Martinez-Castellanos was under the influence of a controlled substance. *See State v. Baker*, 2010 UT 18, ¶ 13, 229 P.3d 650.

¶29   The Fourth Amendment to the United States Constitution protects citizens from "unreasonable searches and seizures." U.S. Const. amend. IV. Under that amendment, "stopping an automobile and detaining its occupants constitute[s] a seizure." *State v. Hansen*, 2002 UT 125, ¶ 28, 63 P.3d 650 (quotation simplified). To determine whether a traffic stop was reasonable, "[w]e apply a two-step test." *Baker*, 2010 UT 18, ¶ 12. First, we ask "whether the traffic stop was justified at its inception." *State v. Gurule*, 2013 UT 58, ¶ 22, 321 P.3d 1039 (quotation simplified). If the stop was justified at its inception, "we proceed to . . . determine whether the detention following the stop was reasonably related in scope to the circumstances that justified the interference in the first place." *Id.* (quotation simplified).

¶30   Because Martinez-Castellanos concedes the stop was justified at its inception, we limit our analysis to the second step. "During the pendency of a traffic stop, if officers gain reasonable suspicion of additional criminal activity, they may turn their attention from the original purpose of the traffic stop to expediently investigate their new suspicion." *Id.* ¶ 31 (quotation simplified). To support reasonable suspicion, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *State v. Markland*, 2005 UT 26, ¶ 10, 112 P.3d 507 (quotation simplified). Thus, although officers may not extend the scope of a traffic stop based on "merely an inchoate and unparticularized suspicion or hunch," "a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct." *Id.* (quotations simplified).

¶31   Essentially, "reasonable suspicion requires an objectively reasonable belief that an individual is engaged in . . . criminal activity," *Gurule*, 2013 UT 58, ¶ 31 (quotation simplified), "based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop," *State v. Navarro*, 2017 UT App 102, ¶ 17, 400 P.3d 1120 (quotation simplified). Courts must "judge the officer's conduct

in light of common sense and ordinary human experience and accord deference to an officer's ability to distinguish between innocent and suspicious actions." *Markland*, 2005 UT 26, ¶ 11 (quotation simplified). The ultimate question is whether "the facts available to the officer . . . [would] warrant a man of reasonable caution in the belief that the intrusion the officer plans is justified in order to investigate the criminal activity." *State v. Anderson*, 2013 UT App 272, ¶ 12, 316 P.3d 949 (quotation simplified).

¶32   The State argues that Martinez-Castellanos's arguments on appeal would not "have persuaded the [district] court to grant the motion to suppress." Specifically, it asserts that those arguments fail to show that Officer lacked "reasonable suspicion to investigate whether [Martinez-Castellanos] was under the influence of a controlled substance." We agree.

¶33   At the evidentiary hearing, Officer said that he began to suspect Martinez-Castellanos was under the influence when he approached the car and observed "jittery movements." His suspicion grew as the stop developed because he observed more "jittery movements" as well as "jittery speech" and he noticed that Martinez-Castellanos was "talking really fast." A review of the relevant case law reveals that Martinez-Castellanos's behavior during the traffic stop, as it is described in the record before us, supports a finding of reasonable suspicion. *See State v. Stewart*, 2014 UT App 289, ¶ 16, 340 P.3d 802 (determining that an officer had "adequate suspicion that [the defendant] was operating her vehicle under the influence" when he "observed that [the defendant] was jittery, she was dancing around in the car, her pupils were constricted, and her speech was slurred" (quotation simplified)); *see also Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (determining the same when the officer observed "a moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand movements"); *State v. Hogue*, 2007 UT App 86, ¶ 8, 157 P.3d 826 (determining the same when an officer observed the defendant's "dilated pupils, nervous demeanor, and jerky body movements");

¶34    Granted, general nervousness and fast speech, without more, may not be enough to support reasonable suspicion. *See Salt Lake City v. Ray*, 2000 UT App 55, ¶¶ 5, 19, 998 P.2d 274 (determining that there was no reasonable articulable suspicion when the defendant "appeared nervous, although not agitated, and she talked fast and repeatedly shifted her weight from one foot to the other"); *see also State v. Humphrey*, 937 P.2d 137, 143 (Utah Ct. App. 1997) (noting that "nervousness," alone, "cannot support reasonable suspicion"). But Officer explained that Martinez-Castellanos's behavior was "more than what you'd expect based upon nervousness of a driver." That is, Officer's "training and experience as a police officer and dealing with thousands of cars that [he had] stopped in [his] career" led him to believe that Martinez-Castellanos "was under the influence of something." In his words, "based on all the people I arrest for stimulants and deal[] with," Martinez-Castellanos's behavior "made me think" he "could have been under [the influence of] stimulants."

¶35    Our precedent is clear that "[c]ourts must . . . accord deference to an officer's ability to distinguish between innocent and suspicious actions." *Markland*, 2005 UT 26, ¶ 11 (quotation simplified). At the time of the traffic stop, Officer had twenty years of experience as a police officer and had been on the Utah Highway Patrol drug and interdiction squad for the previous nine years. He was also certified as a drug recognition expert as well as a drug-recognition-expert instructor. Although "experience and training alone might lead to only a hunch," *Anderson*, 2013 UT App 272, ¶ 27, "the Fourth Amendment is satisfied" if "the underlying facts, and reasonable inferences drawn from those facts, justify the conclusion that reasonable suspicion existed," *Markland*, 2005 UT 26, ¶ 19. Here, the evidence leads us to conclude that Officer's experience and training allowed him to determine that Martinez-Castellanos's "rapid speech" and "jittery movements" constituted "suspicious," rather than "innocent," behavior. *See id.* ¶ 11.

¶36    Further, Martinez-Castellanos's behavior was not the only relevant factor. Instead, Officer's suspicion "heightened" when

he learned of Martinez-Castellanos's criminal history. Officer specifically noted the history of illegal drug activity, which included multiple drug-related charges as well as a felony conviction and a probation revocation for possession of a controlled substance.

¶37    This court has previously determined that "information regarding an individual's past . . . criminal activity can be a factor in determining reasonable suspicion." *Humphrey*, 937 P.2d at 143. Indeed, "in conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus." *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005); *see also State v. Dennis*, 2007 UT App 266, ¶¶ 10, 12, 167 P.3d 528 (upholding a finding of reasonable suspicion based on "the early morning hour, the officers' knowledge of the truck's occupants and their criminal histories, the truck's earlier presence at a location known for drug activity, and the occupants' nervousness"). Accordingly, we conclude that Officer's observations during the traffic stop, combined with Martinez-Castellanos's criminal history, "were sufficient to warrant a prudent person's belief" that Martinez-Castellanos was under the influence. *See Hogue*, 2007 UT App 86, ¶ 11 (quotation simplified).

¶38 Martinez-Castellanos identifies several arguments that should have been fleshed out in a memorandum supporting the motion to suppress. First, he asserts that the evidence "fails to show support that [his] speech or manners were rapid or unusual." And he argues that "the district court should be given the opportunity in remand proceedings to assess the evidence." To support his argument, Martinez-Castellanos claims that Officer's testimony about his observations of Martinez-Castellanos during the stop changed at trial. According to Martinez-Castellanos, at trial, Officer "stated only that Martinez-Castellanos had rapid speech and movements." But Martinez-Castellanos's assertion does not accurately represent Officer's testimony. At trial, Officer said he observed "rapid speech and rapid movements" that, "based on [his] training and experience," made him

"believe that [Martinez-Castellanos] might have been under the influence of a controlled substance." After reviewing the transcript, we disagree with Martinez-Castellanos's claim that Officer "changed his testimony" "over the course of the proceedings."

¶39 Martinez-Castellanos also makes much of the fact that Officer "admitted he was not familiar with Martinez-Castellanos" and conceded that his "manner could have been his 'normal way.'" He argues that Officer "qualified his observations about 'rapid mannerisms'" by saying he "did not know if rapid manners were [Martinez-Castellanos's] 'personal traits' or 'personal speech.'" But again, Martinez-Castellanos's description does not put Officer's testimony in context. Officer made these statements while explaining his decision to perform the sobriety tests. He said that "fast speech and fast movements" are "commonly what [he sees] when people are under the influence or have been using a controlled substance." And he clarified that the sobriety tests allowed him to quickly confirm or dispel his suspicions and determine "whether that's his normal way" or "it's a controlled substance on board."

¶40 Further, "it is settled law that an officer is not obligated to rule out innocent conduct prior to initiating an investigatory detention." *Markland*, 2005 UT 26, ¶ 17. "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in [these] cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation simplified). Thus, even if we were to accept as true the assertion that Martinez-Castellanos's behavior was "at least as consistent with lawful behavior as with the commission of a crime," we nonetheless conclude that "the underlying facts, and reasonable inferences drawn from those facts, justify the conclusion that reasonable suspicion existed" to support Officer's decision to perform the sobriety tests. *Markland*, 2005 UT 26, ¶¶ 18–19.

¶41    Martinez-Castellanos also argues that the dash-cam video is "objective evidence" that "fails to support that [his] speech or manners were rapid or unusual." Specifically, he claims the video shows that Officer "did most of the talking and had a very brief interaction with Martinez-Castellanos before he took actions to extend the stop," and that Martinez-Castellanos was "polite and cooperative."

¶42    We give little weight to this argument because the dash-cam video was before the district court when it denied the motion to suppress. The video was provided to the court as part of the State's opposition, and in denying the motion, the court said it had "reviewed testimony given and *memorandum provided*." (Emphasis added.) Accordingly, we consider this argument only to the extent that a supporting memorandum's written interpretation of the dash-cam video would have assisted in persuading the district court to grant the motion.

¶43    As Martinez-Castellanos notes, the dash-cam video is "objective evidence." It speaks for itself. And based on the parties' arguments, we conclude that a supporting memorandum detailing the video would have been of little assistance to the court. The State disagrees with Martinez-Castellanos's description of the video, arguing that he has failed to show "the dash-cam video refutes [Officer's] observations." According to the State, "[i]t is difficult, if not impossible, to accurately evaluate [Martinez-Castellanos's] manner and speech" in the dash-cam video because Martinez-Castellanos's movements are "mostly indiscernible," most of what he says "is largely unintelligible," and "what is intelligible arguably supports [Officer's] characterization."

¶44    On appeal, however, it is not our role to make such factual determinations. Indeed, Martinez-Castellanos acknowledges in his reply brief that this court should not "make its own interpretations of the evidence." He argues instead that the district court "is in the best position to assess whether [Officer's] testimony . . . is unsupported by

objective information." But as previously discussed, the district court received the video before denying the motion to suppress and seems to have considered it along with the State's memorandum. Thus, even assuming we agree with Martinez-Castellanos that a supporting memorandum that included a favorable interpretation of the dash-cam video "would have been relevant to the district court under the totality of the circumstances," we conclude that he has failed to show a reasonable probability that presenting such an interpretation would have persuaded the district court to grant the motion.

¶45   Next, Martinez-Castellanos argues that his "criminal history is insufficient to support reasonable suspicion even when it is considered with other factors because the history was three years old." To support this argument, he cites *State v. Brooks*, 849 P.2d 640 (Utah Ct. App. 1993). *Brooks* was a probable cause case in which this court determined that the defendant's "criminal record does nothing to establish that he is currently dealing in controlled substances, particularly since the most recent arrest was . . . at least two years prior to the events in the case at bar." *Id.* at 644; *see also State v. Keener*, 2008 UT App 288, ¶ 12 n.6, 191 P.3d 835 (determining that "arrests from five to fourteen years prior" were "too old" to support probable cause, but "drug-related arrests—the most recent of which was only seven months prior" were properly considered (emphasis omitted)). But unlike *Brooks*, this is a reasonable suspicion case, and Martinez-Castellanos provides no authority for his assertion that "the 3-year-old history was [too] stale" to support reasonable suspicion.

¶46   Granted, courts should analyze a person's criminal history as a whole, considering factors such as the timing, frequency, and seriousness of the pertinent crimes. *See Humphrey*, 937 P.2d at 141 ("Reasonable suspicion is based on objective facts, which are given due weight in light of the reliability of the information and the reasonable inferences drawn from those facts." (quotation simplified)). But here, Martinez-Castellanos's criminal history included drug-related behavior spread over the previous nine years. The

report revealed various charges, a felony conviction, and a probation revocation for possession of a controlled substance. And although the most recent offense—the probation revocation—was three years before the traffic stop, we conclude that, "when viewed in conjunction with other factors," Martinez-Castellanos's criminal history supported Officer's decision to perform the sobriety tests. *See United States v. Moore*, 795 F.3d 1224, 1230 (10th Cir. 2015) (explaining that, "when viewed in conjunction with other factors that suggest criminal activity may be occurring, criminal history can be a powerful contributor to the reasonable suspicion analysis").

¶47 In sum, based on the record and arguments before us, we conclude that Officer's actions were justified by a reasonable suspicion that Martinez-Castellanos was under the influence of a controlled substance. Thus, Martinez-Castellanos has failed to demonstrate a reasonable probability that the motion to suppress would have been granted had Trial Counsel made "timely and proper arguments" supporting the motion.

## II. Clerical Error

¶48 Although we affirm Martinez-Castellanos's convictions, the State nonetheless asks us to remand the case to correct a "clerical error" in Martinez-Castellanos's sentence. Specifically, it asserts that the district court "entered [the] conviction on Count II (hydrocodone possession) as a third degree felony" when it "should have been entered only as a Class B misdemeanor." According to the State, this error occurred because an amendment to the original information made at the preliminary hearing was later omitted from the amended information. Martinez-Castellanos agrees that his conviction for hydrocodone possession was incorrectly entered and he asks us to "remand the case to correct his sentence."

¶49 Under the Utah Rules of Criminal Procedure, "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission

may be corrected by the court at any time after such notice, if any, as the court may order." Utah R. Crim. P. 30(b). Further, in Martinez-Castellanos's case, possession of hydrocodone is defined by statute as "a class A misdemeanor." *See* Utah Code Ann. 58-37-8(2)(b)(ii) (LexisNexis Supp. 2018) (establishing that a person convicted of possessing a "schedule II" controlled substance "is guilty of a class A misdemeanor on a first or second conviction, and on a third or subsequent conviction is guilty of a third degree felony"); *see also id.* § 58-37-4(2)(b)(i)(A)(X) (designating hydrocodone as a "schedule II" controlled substance). But "the district court sentenced him as if the offense were a third-degree felony." *State v. Williams*, 2018 UT App 176, ¶ 11. "This was an illegal sentence." *Id.*

¶50　We therefore vacate Martinez-Castellanos's sentence for the possession of hydrocodone conviction and remand to the district court for resentencing on that count. *See id.*

CONCLUSION

¶51　Martinez-Castellanos has failed to demonstrate that his motion to suppress was meritorious. Accordingly, we affirm his convictions because the errors in the district court did not result in sufficient prejudice to warrant reversal. But we vacate Martinez-Castellanos's sentence for the possession of hydrocodone conviction and remand to the district court for resentencing on that count.

───────────

ORME, Judge (concurring specially):

¶52　I concur in the court's opinion which, of necessity, is confined to the narrow issue on remand, specifically "whether the motion to suppress was meritorious." *Supra* ¶ 4. But I still hold the view that "a serious miscarriage of justice occurred here," *State v. Martinez-Castellanos*, 2017 UT App 13, ¶ 82, 389 P.3d 432 (Orme, J., concurring in part and concurring in the result), *rev'd*, 2018 UT 46, 428 P.3d 1038, separate and apart from

the ultimate merits of the suppression motion that competent counsel would have more thoroughly developed.

¶53   The famous Highway Patrol veteran who served as the foreperson on the jury "had no business being on the jury that convicted Martinez-Castellanos." *Id.* ¶ 90. *See id.* ¶¶ 85–89. That he did so serve was a result of constitutionally ineffective representation on the part of defense counsel, *id.* ¶¶ 89–90, and plain error on the part of the district court, *id.* ¶ 89. "The prejudice in this case is so palpable . . . that Martinez-Castellanos's entitlement to a new trial is in no sense a close question." *Id.* ¶ 90. I find it regrettable that this significant issue got rolled into a cumulative error analysis when this appeal first came to us, permitting the resolution embraced by the Utah Supreme Court, namely, that there was no reversible error if the other two errors—the ones that turned on the ultimate merit of the suppression motion—fell by the wayside, leaving nothing to "cumulate" with the obvious jury impropriety "into reversible error." *Supra* ¶ 4.

————